[No. 6367. Decided April 10, 1907.]

P. C. KAUFFMAN, *Respondent*, v. ALEXANDER BAILLIE *et al.*, *as Executors of the Estate of Robert Wingate, Deceased, et al., Appellants.*[1]

WITNESSES — COMPETENCY — TRANSACTIONS WITH DECEASED. A plaintiff claiming under a contract with a person since deceased may testify as to transactions between himself and a third person and as to services performed by him which appear to be the consideration for the contract, and the same does not fall within the statute prohibiting testimony of a transaction had with, or statements made to or by, a deceased person.

CONTRACTS—DELIVERY—EXECUTION — EVIDENCE — SUFFICIENCY. In an action upon a contract signed by and in the handwriting of a person since deceased, the contract is admissible in evidence where it shows on its face that it was for the benefit of plaintiff who had had possession of it for a long time and ever since its date, execution and delivery being presumed from such facts.

BROKERS—CONTRACT FOR PROFITS—TIME FOR PERFORMANCE. Where lots are purchased for speculation, the vendee agreeing to pay a broker one-third of the net profits when the lots are sold, a reason-

[1]Reported in 89 Pac. 548.

able time for sale is intended, and upon death of the vendee and re-
pudiation of the contract by his executor, the broker may recover
of the estate one-third of the net value of the land after deducting all
expenses.

Appeal from a judgment of the superior court for Pierce
county, Huston, J., entered June 9, 1906, upon findings in
favor of the plaintiff, after a trial on the merits before the
court without a jury, in an action to establish and enforce
an interest in real property.   Affirmed.

*Fogg & Fogg*, for appellants.
*Ellis & Fletcher*, for respondent.

CROW, J.—Robert Wingate died on March 2, 1905.
About December 1, 1900, contemplating the purchase of
certain lots in the city of Tacoma, then owned by one
Charles K. Zug, he executed the following instrument:

"Office Robert Wingate.
                    "Tacoma, Washington, Decr. 1st, 1900.
        "Know all men by these presents that I Robert Win-
gate of Tacoma Washington so soon as I acquire title from
Charles K. Zug of Philadelphia for Lots 7, 8, 9, 10, 11 & 12
inclusive in Block 2100 Tacoma Land Co's 1st Addition to
Tacoma, Wash., which I expect to do before January 1901.
Then and in that event I agree to pay to P. C. Kauffman
personally one-third (1-3) of the profits arising from sale
of above described lots when I sell the same, said profits will
be arrived at by deducting price paid for lots together with
interest computed at 8 per ct. per annum on money invested
between time of purchase and time of sale.   P. C. Kauffman
is not interested in purchase, but will participate to the ex-
tent of one-third in net profit arising from sale, when sold,
the basis for this agreement is upon presumption that I
acquire title to lots above described.   Robert Wingate."

About December 19, 1900, Mr. Wingate received a deed
for the lots and the title has since been in him or his estate.
P. C. Kauffman, the plaintiff, asserting an interest in the
lots, presented a claim to Wingate's estate, which was re-

jected by his executors. Thereupon he as plaintiff brought this action against the defendants, as the executor, heirs at law, and legatees of Robert Wingate, deceased, to establish and enforce his alleged interest.

On the trial, it was admitted that the instrument above set forth and then produced by Mr. Kauffman was in the handwriting of the decedent and signed by him; that an envelope in which it was inclosed was addressed to Mr. Kauffman, also in the decedent's handwriting; that Mr. Wingate had received from Mr. Zug a deed for the lots, dated December 19, 1900, reciting a consideration of $5,800; that this deed, which at the trial was produced by the defendants, had been recorded, and that Robert Wingate had kept an itemized account with the lots, charging to them all disbursements for purchase money, taxes, interest, etc., and crediting them with a small amount of ground rents received. The written instrument, envelope, and deed were admitted in evidence over the defendants' objections. One Berry, a business man of Tacoma, testified that, about October, 1903, Robert Wingate told him he wanted to sell the lots, as he wished "to get settled up with an interested party up in the bank"; that this conversation took place in the presence of Wingate's daughter, on Pacific avenue, at a point from which the Fidelity bank was up the hill; that no other bank was up the hill from that point; that the plaintiff Kauffman was an officer of the Fidelity bank, and employed therein, and that Berry understood Wingate to refer to some one in that bank, although no name was mentioned. Evidence was also admitted to show the value of the lots. The plaintiff, Kauffman, over strenuous objections of the defendants, was permitted to testify that the written instrument and envelope above mentioned had been in his possession at all times since December 1, 1900; that immediately after they came into his possession he conducted negotiations with Mr. Zug for the purchase of the lots for Mr. Wingate; that he sent numerous letters and telegrams to Zug, and made a trip to Philadelphia, Pennsyl-

vania, Mr. Zug's home, to see him personally; that he finally
succeeded in getting the purchase price fixed at $5,800; that
a deed was executed by Zug, conveying the lots to Wingate,
being the deed produced at the trial by the defendants; that
Zug was Kauffman's first cousin; that their relations were
very close and intimate, and that Kauffman therefore had a
better chance than any other person to secure the property.
In answer to a question propounded by defendants' counsel,
Mr. Kauffman, on cross-examination, further stated that the
written instrument and envelope were delivered to him by
Mr. Wingate. To this statement the defendants at the time
objected, and moved that it be stricken.

The theory of this action is that, in consideration of
Kauffman's contemplated services in securing and purchasing
the lots, Mr. Wingate had executed and delivered to him
the written instrument above set forth, and that he, as an
agreed compensation for his services, is entitled to one-third
of the net value of the lots, after deducting the original pur-
chase price, together with other disbursements such as taxes
and interest. The trial court made findings in favor of
Kauffman, estimating his interest on this basis at $9,913.70.
From a money judgment in his favor for that amount, the
defendants have appealed.

The appellants do not object to the form of the judgment.
The parties consented that, if the respondent had any interest,
it might be ascertained, and judgment entered for its cash
value. The appellants, however, insist that the respondent
has no interest, and that he is not entitled to any relief, either
legal or equitable.

The appellants contend that the trial court erred in over-
ruling their objection to the testimony of the respondent,
Kauffman, which they insist was inadmissible, he being dis-
qualified under Bal. Code, § 5991 (P. C. § 937), reading
as follows:

"No person offered as a witness shall be excluded from
giving evidence by reason of his interest in the event of the

action, as a party thereto or otherwise; but such interest may be shown to affect his credibility: *Provided, however,* That in an action or proceeding where the adverse party sues or defends as executor, administrator, or legal representative of any deceased person, or as deriving right or title by, through, or from any deceased person, or as the guardian or conservator of the estate of any insane person, or of any minor under the age of fourteen years, then a party in interest or to the record shall not be admitted to testify in his own behalf as to any transaction had by him with or any statement made to him by any such deceased or insane person, or by any such minor under the age of fourteen years. . . . "

Except as to Kauffman's statement, made on cross-examination, that the agreement and envelope were delivered to him by Mr. Wingate, which we will not consider, the appellants are mistaken when they insist that he testified to any transaction had by him with, or any statement made to him by, the decedent. He was cautioned by his attorney to eliminate from his testimony any conversations or transactions with Mr. Wingate, and carefully observed their admonition. The statute does not disqualify him from being a witness. It only prohibits him from telling of any transactions had by him with, or any statements made to him by, the decedent. His testimony was only as to transactions between himself and Mr. Zug, a third party, all of which occurred in the absence of the decedent, and was offered to show the services performed by respondent in securing and purchasing the property. Mr. Wingate, if living, could not testify as to these transactions, nor would he be in any position to deny a single statement made by the respondent, having no personal knowledge thereof. With the exception of the one statement made on cross-examination, all of respondent's evidence was admissible. *Ah How v. Furth,* 13 Wash. 550, 43 Pac. 639; *Marvin v. Yates,* 26 Wash. 50, 66 Pac. 131; *Belden v. Scott,* 65 Wis. 425, 27 N. W. 356.

The case of *Marvin v. Yates* bears a marked resemblance to this, the principal difference being that an oral contract

was there relied upon, not being evidenced by any written instrument. The plaintiff, Marvin, was permitted to testify to acts done and services performed by him in the course of his employment, but in the absence of the deceased. In passing upon his competency and the admissibility of his evidence, this court said:

"It is assigned as error that the court permitted respondent to testify in violation of the statutory rule prohibiting a claimant from testifying concerning transactions had by him with, or statements made to him by, the deceased person. We think the court did not permit a transgression of the rule. Respondent was instructed by counsel to exclude from his answers anything concerning personal transactions with Woodward, or any conversations between them about such transactions. This, we think, respondent did. He testified that he looked at certain lots when he was alone, stating the time when he saw them, their value, and that deeds were afterward made for the property; but he did not say anything at all about the conversations or transactions between himself and Woodward. Considering the difficulties attending the proofs in this class of cases, and the usual temptation to transgress upon the statute, we think the respondent kept well within the rule as interpreted by this court in *Ah How v. Furth*, 13 Wash. 550, 43 Pac. 639."

In *Ah How v. Furth*, supra, the contract of employment having been proven, the plaintiff was permitted to detail the work he had done and the services he had performed in the course of his employment, eliminating from his testimony all personal transactions and communications between himself and the deceased. Referring to his evidence, this court said:

"The testimony of respondent that he worked at the house of the intestate and the character of the work performed by him, was not testimony in relation to a 'transaction had by him with, or any statement made to him by,' such intestate. Such testimony related solely to acts of the witness alone, and was, we think, entirely competent."

The appellants cite and rely upon the cases of *Spencer v. Terrel*, 17 Wash. 514, 50 Pac. 468; *Kline v. Stein*, 30 Wash.

189, 70 Pac. 235, and *Bay View Brewing Co. v. Grubb,*
31 Wash. 34, 71 Pac. 553, decided by this court, all of which
can be easily distinguished. In *Spencer v. Terrel,* there
was no evidence whatever of the trust alleged by the plain-
tiff. Here there is documentary evidence in the handwriting
of the decedent, corroborated by his statement, to the witness
Berry, which is not contradicted by the decedent's daughter,
who was present. In *Kline v. Stein,* proof of the purchase
of the land by plaintiff rested entirely on his evidence of
transactions between himself and the decedent. In *Bay View
Brewing Co. v. Grubb,* the evidence was excluded for the rea-
son that the member of a partnership, with whom the witness
had the transaction in issue, was dead and the surviving
partner had no personal knowledge thereof.

The deed from Zug to Wingate was properly admitted in
evidence. The execution of the written agreement, and the
receipt of the deed by Wingate, were both admitted by the
answer. The appellants offered no evidence except on the
value of the lots. As to all other issues they submitted their
case on the evidence admitted on behalf of the respondent.
They claim title under the Zug deed, and we fail to under-
stand how Mr. Wingate, if alive, could, in the face of these
admissions, deny the deed or its recitals.

The written instrument conceded to be in Wingate's hand-
writing was properly admitted. It tended to show the agree-
ment of Wingate, and the interest of the respondent. Appel-
lants contend that its delivery to Kauffman has not been
shown by competent evidence. On that issue the undisputed
facts raise a presumption of delivery sufficient to constitute
a *prima facie* case in favor of the respondent. The instru-
ment was written and signed by the decedent. It shows on
its face that Kauffman is the person for whose benefit it was
drawn. He was the only person to whom, in the course of
business, it would ordinarily have been delivered. It had been
in his possession for a long period of time, in fact since about
the date of its execution. He produced it at the trial. No

fact or circumstance tending to question the validity or good faith of his possession has been shown. His possession was evidence of ownership. Under the circumstances it will be presumed that the instrument was executed and delivered to Kauffman on December 1, 1900, the date it bears. Wigmore, Evidence, § 157, subd. 2; Jones, Evidence, §§ 44 and 45; Devlin, Deeds, §§ 178, 294, 295; *Rohr v. Alexander*, 57 Kan. 381, 46 Pac. 699; *People v. Snyder*, 41 N. Y. 397; *Reed v. Douthit*, 62 Ill. 348; *Leonard v. Fleming* (N. D.), 102 N. W. 308.

Appellants call attention to the words, "I agree to pay to P. C. Kauffman personally one-third of the profits arising from the sale of the above-described lots when I sell the same," and insist that Kauffman cannot recover as no sale has been made. The contract on its face shows that the lots were to be purchased for sale. In other words, they were a speculation, and were only held for an advance. It was intended that, when a sale was made, Kauffman should receive his interest which could be easily ascertained. In such a contract, when no exact time for performance is fixed, a reasonable time is intended. Wingate died before sale was made. The property has multiplied many times in value. The appellants have denied respondent's interest. They also refuse to sell, and may continue to do so indefinitely, although a handsome profit can now be realized. If their construction of the agreement in this regard be correct, the only course necessary for them to pursue to eliminate respondent's interest altogether will be to hold the property indefinitely, and to continue refusing to sell. Any such construction does violence to the evident spirit and intent of the agreement, which cannot be misunderstood. Wingate is now dead, and the respondent is compelled to enforce his rights or lose them entirely. He is now asserting them in the only manner available to him, and the appellants, although contesting his interest, consent that the same, if sustained by the court, may be awarded to him in cash. In the light of the facts disclosed

by the record, their contention that he is not entitled to recover in the absence of a sale cannot be sustained. *Noyes v. Barnard*, 63 Fed. 782.

After a careful examination of all the evidence, we conclude that the findings made by the trial court are sustained by its clear preponderance. The contract is in existence and speaks for itself. The respondent has performed the services detailed by him. The evidence of Berry, a disinterested party, is undisputed. The deceased kept a distinct account with these lots, which he must have done in view of Kauffman's interest. The findings support the final judgment. The trial court has committed no prejudicial error. The judgment is affirmed.

HADLEY, C. J., DUNBAR, MOUNT, and ROOT, JJ., concur.