[No. 36098.    Department One.    February 28, 1963.]

LESTER M. HAMPTON *et al., Respondents,* v. AMY HAMPTON GILLELAND, *Appellant,* C. F. SLAGLE *et al., Defendants.*\*

\*Reported in 379 P. (2d) 194.

*O. Nels Stromberg,* for appellant.

*Hull, Armstrong & Vander Stoep,* for respondents.

HALE, J.—Suit to partition real estate. The main questions are: The application of the dead man's statute where the adverse party is called as a witness; the effect of delivery of a deed; and the presumptions attending the execution of a deed.

On July 16, 1921, Charles J. Hampton executed a deed naming his seven children as grantees to an 80-acre parcel of real estate in Lewis County. The deed recited a consideration of $1, and that the grantees agreed to assume a Federal Loan Bank mortgage and a second mortgage held by the State Bank of Morton. The deed further warranted that the grantor was owner in fee simple; that the premises were free from all encumbrances except the two particularly mentioned mortgages; and that the grantor

would defend the title against all adverse claims. The deed bore a notarial seal and a signature showing that it was regularly acknowledged; it was stamped as being filed for record at the office of the Lewis County auditor two days later, on July 18, 1921. All of the grantees or their successors join in this suit to partition the land and to have the same sold and the avails divided except appellant, Amy Hampton Gilleland, who resists the suit. It is agreed by all parties, however, that, if the partition suit is well taken, it should be accomplished by sale and division of the money as it would be impracticable to divide the land.

Appellant resists the partition and claims ownership of the land by virtue of certain agreements made between her and her father, the grantor, in 1946 and 1950. She challenges the deed of July 18, 1921, under which partition is brought, by asserting that it was made by her father in contemplation of death; that he never intended to part with ownership of the land except in death; that no delivery of the deed was actually made by the grantor to the grantees; that he never intended the deed to be recorded except at death, and did not know of the recordation of the deed until many years after it had been filed for record; that the grantor continued to reside on the land and to pay off the mortgages mentioned in the deed and to use the property as his own until his death some 34 years later, in 1955.

Appellant claims to own the land through an agreement made with her father in March of 1946, in which he, in writing, promised to devise the property to appellant and her husband in consideration that they provide and care for him for the remainder of his life, and by a later written agreement, dated July 8, 1950, following appellant's divorce from her husband, in which her father expressed an intent to give the farm to the appellant to the exclusion of his other children and grandchildren.

Appellant seeks to establish the validity of these latter two writings (the instruments of March, 1946, and July 8, 1950), by showing that she fully complied with their

terms and conditions and did care for, support and maintain her father until his death.

The case turns on the question of evidence arising from appellant's attempt to prove that on July 16, 1921, when Charles J. Hampton signed the deed, he was in ill health, that he made the deed without consideration, and that he intended that it should not be recorded until after his death. Appellant hoped thus to establish that the deed was not a conveyance but was a kind of testamentary device to take effect only upon death. If proof were admitted to show the invalidity of the deed as a then present conveyance, further evidence would then become relevant to enable appellant to show ownership in herself arising from the 1946 and 1950 documents, as the grantor lived until the year 1955. If, however, the evidence offered to establish that the deed was not a present conveyance, *i.e.,* that it was in contemplation of death and not to be recorded or take effect until the death of the grantor, turned out to be inadmissible, then, of course, the deed, in all likelihood, would be held to be absolute and any evidence in the purported writings of 1946 and 1950 would undoubtedly be irrelevant and immaterial as in anywise affecting the title and ownership of the land described in the deed. Neither laches nor the statute of limitations become doctrinal issues in the case.

Appellant called as a witness adverse party Lester M. Hampton, one of the grantees named in the deed and plaintiff here, and, in the face of objections, offered to prove by him in substance the following: That on July 16, 1921, when their father, Charles J. Hampton, executed the deed as grantor, he was in ill health, thought he was going to die, executed the deed to his children without consideration, and imposed the condition that his deed not be recorded until after his death; that two days later, the witness, Lester M. Hampton, without the knowledge of the grantor and against his will, obtained possession of the deed and had the same recorded; that the grantor continued to reside on the land, paid all of the taxes, made

all of the mortgage payments necessary to keep the title intact, and, in short, treated the property as his own; that grantor knew nothing of the recording of the deed until the year 1926.

Respondents made timely objections to the offer of this evidence on the grounds that it was precluded by RCW 5.60.030 as constituting evidence of statements made by, or transactions had with, a deceased person; that such evidence would vary by parol the terms of an absolute deed; and that the deed, being regular on its face and recorded, constituted evidence, in and of itself, both of its delivery and its validity.

RCW 5.60.030, in so far as herein pertinent, reads as follows:

".  .  . in an action or proceeding where the adverse party sues or defends  .  .  . as deriving right or title by, through or from any deceased person  .  .  . shall not be admitted to testify in his own behalf as to any transaction had by him with, or any statement made to him, or in his presence, by any such deceased  .  .  . person .  .  ."

As we have pointed out, a novel turn in the case developed when appellant called her brother, Lester M. Hampton, as a witness to establish the facts set forth in her offer. At the time, he was not only a party adverse to her but, in addition, one of the parties claiming a right to partition under the deed in which all parties to the action were either grantees or successors. It was the witness himself who claimed the bar of the statute, asserting his own incompetency to testify thereunder, and urged the exclusion of his own testimony on the additional grounds set forth *supra*. The witness also made it clear that he was fearful that a failure to urge his objections to this evidence might in itself constitute a waiver on his part to the protection of the dead man's statute and would thus open the door to transactions with, or statements made by, the deceased grantor.

Was the testimony properly excluded by the trial court under the so-called dead man's statute?

The dead man's statute has been under attack by scholars and jurists for more than a generation. Examples of doubt in its efficacy to afford the protection expected under it are contained in Dean Mason Ladd's addendum to the Model Code of Evidence, 329, 340. Indeed, the Model Code of Evidence, as proposed by the American Law Institute, would do away with the rule entirely by omitting it as one of the factors in determining competency. See Model Code of Evidence, Rule 503. Also, see 22 Wash. L. Rev. 211 (1947); 49 Nw. U. L. Rev. 504 (1954); and 4 U.C.L.A. L. Rev. 175 (1957).

Yet the rule remains firmly embedded in the jurisprudence of this state. As recent a case as *In re Malloy's Estate,* 57 Wn. (2d) 565, 358 P. (2d) 801, applies the statute in excluding the testimony of certain heirs who seek to testify to conversations with the deceased testatrix in a will contest. This case cites *In re Wind's Estate,* 27 Wn. (2d) 421, 178 P. (2d) 731, 173 A. L. R. 1276, which expressly overrules *In re Findley's Estate,* 199 Wash. 669, 93 P. (2d) 318, and the exclusionary rule has been sustained without qualification in *Martin v. Shaen,* 26 Wn. (2d) 346, 173 P. (2d) 968.

Thus, if the evidence offered describes transactions with, or relates statements made by, the deceased grantor to the witness, or in the latter's presence, such evidence was properly excluded provided it was offered by one whose interest or claims were adverse to the decedent, or, we should add, to persons claiming under the decedent's deed. That the evidence related to a transaction with a deceased person cannot be doubted. It is self-evident that the making and delivery of a deed is in and of itself a transaction; the conveyance of land standing alone could not be held to be otherwise.

The other matters included in the appellant's offer of proof—to the effect that the grantor made the deed in contemplation of death, that delivery was conditioned upon his subsequent demise, and that no recordation be had until after his death—could be shown only by a recital

of statements made by decedent to the witness or within his hearing, and thus they fell directly within the ban of the statute which precludes in such circumstances statements made by or to the decedent.

One final aspect of the offer of proof must be considered. Was the evidence offered submitted by or on behalf of one standing in the relationship of an adverse party within the meaning of the statute?

■ One of the major purposes of this legislative enactment is to give protection to the writings and documents of a decedent or persons claiming thereunder, so that decedent's purposes in making a conveyance in writing will not be defeated by parol description of his acts and purposes after his death.

". . . The purpose of the statute is to prevent the living from taking an unfair advantage of the estate of the dead. . . ." *Robertson v. O'Neill,* 67 Wash. 121, 120 Pac. 884.

Thus, the statute serves to protect the decedent and those who take or claim under him by virtue of his writings. Indeed, the decedent and his successors by written instrument are frequently described in the authorities as "protected persons," and this designation is emphasized again and again in determining if there has been a waiver of the statute by the introduction of evidence by or on behalf of the protected party. 97 C. J. S., Witnesses § 242, *et seq.*; 58 Am. Jur., Witnesses §§ 360, 361.

Here, all grantees claiming under the deed according to its terms, and not otherwise, would fall into the category of protected persons, and, in the absence of a waiver of this protection, would be entitled to employ it as a shield. Conversely, appellant here, notwithstanding that she also is a grantee, but claiming to take under a subsequent contract or arrangement with the decedent which purported to vitiate or alter the legal effect of the decedent's writings, would thereby be cast in the role of adverse party—that is to say, one whose interests would be held to be adverse

in character to those who claim under the decedent's writings.

As to waiver, respondent Lester M. Hampton read the law correctly when he assumed that testimony on his part at the instance of the adverse party who called him would, in the absence of objections by him, constitute a waiver of the statute. *Boettcher v. Busse,* 45 Wn. (2d) 579, 277 P. (2d) 368, 49 A. L. R. (2d) 191.

The incompetency of the adverse party to testify to transactions or communications with the deceased may also be waived by cross-examining the adversary as to the transactions or communications. 3 Jones on Evidence 1457. We have earlier said that by such cross examination, the adverse party is rendered competent to testify to the whole of the particular transaction. *Robertson v. O'Neill, supra.*

That the doctrine of waiver may serve to lift the protection of the statute is the established rule in this state, is also supported by the following cases: *Zvolis v. Condos,* 56 Wn. (2d) 275, 352 P. (2d) 809; *Boettcher v. Busse, supra; Johnson v. Peterson,* 43 Wn. (2d) 816, 264 P. (2d) 237.

We hold, then, that the entire offer of proof made by the appellant concerning the circumstances surrounding the execution of the deed and the purposes of the grantor in executing the same were properly excluded by the learned trial judge. The deed, therefore, remained intact as an instrument of conveyance effective as of the date of the delivery.

■■ The question of delivery, however, must be considered despite the exclusion of evidence concerning the execution of the deed. If the record is silent, as it is here, concerning the making and delivery of a deed, where does the law leave the parties to the instrument? In *Martin v. Shaen, supra,* it is particularly pointed out that where a grantee is in possession of a properly executed deed, the presumption arises that it has been duly delivered, and anyone claiming that the deed in possession of a grantee was never delivered has the burden of proving that fact.

Since no evidence was received describing the events contemporaneous to or in connection with the execution, delivery, and recordation of the deed, it would seem that the presumption of law expressed in the foregoing rule should govern, and we hold again that the possession of the deed carries with it a strong presumption of its lawful delivery. This presumption can be overcome only by clear and convincing evidence. *Raborn v. Hayton,* 34 Wn. (2d) 105, 208 P. (2d) 133; *Jackson v. Lamar,* 58 Wash. 383, 108 Pac. 946. Moreover, the filing of the deed for record by one of the grantees or his agent constitutes presumptive delivery. *In re Brickey's Estate,* 157 Wash. 532, 289 Pac. 1015; *Brewer v. Rosenbaum,* 183 Wash. 218, 48 P. (2d) 566. Even in a situation where the deed was delivered by the grantor to his own attorney, with power in the grantor to recall the same, it was held to be a good and sufficient delivery to the grantee. *In re Shea's Estate,* 60 Wn. (2d) 810, 376 P. (2d) 147 (Nov., 1962).

██ No evidence having been received to overcome the presumption of a good and sufficient delivery, it would seem that the deed should take effect according to its terms. Except for the provision in the deed that the grantees assumed the two mentioned mortgages, the instrument proved absolute on its face and by its terms constituted a conveyance in fee simple. As an absolute conveyance, no limitation or condition could be engrafted upon the estate thereby conveyed through subsequent acts, oral agreement, or by indirection. *Miller v. Miller,* 32 Wn. (2d) 438, 202 P. (2d) 277; *Findley v. Findley,* 193 Wash. 41, 74 P. (2d) 490; *Erfurth v. Erfurth,* 90 Wash. 521, 156 Pac. 523. Thus, in 1921, the grantor divested himself of all interest in the property in issue and transferred the same to his children.

However, this divestiture standing alone does not resolve all of the issues. Appellant, as a necessary corollary to her attack on the deed and its delivery and purposes, then sought to show through the testimony of her former

husband that, during the year 1945, he had been a party to certain conversations with the decedent. It was established that the former husband had filed a claim in the decedent's estate for services rendered in improving the property conveyed by the deed, and thus his interests were correctly held by the trial court to be adverse to decedent's estate. Accordingly, the evidence was likewise subject to exclusion under the dead man's statute.

Most of the remaining evidence offered by appellant was in support of the admission of the two documents heretofore alluded to, both of which were executed by the decedent.

If held operative by the court, they would vitiate the deed of 1921. One agreement, made in writing in 1946, provided that if appellant and her then husband would live with the grantor on the farm and provide and care for him, he would bequeath the property to her; the other instrument, made in July, 1950, while testamentary in language, could be construed to constitute a memorandum of agreement purporting to leave the property to the appellant.

These two writings, both of which were admitted to be the acts of the grantor and in his handwriting, were properly excluded from the evidence. Not only would the proof to support their admission come within the ban of the dead man's statute as involving statements and transactions with a deceased person offered by one adverse to the express intendments of his written deed, but such proof would, in addition, be completely immaterial or irrelevant to affect in any way the conditions as carried out in the deed.

Since the deed became absolute by its terms with its delivery and recordation, evidence attending the execution of the 1946 and 1950 writings was thus immaterial and irrelevant in time and could not be heard to affect the deed's efficacy or alter the consummation of its expressed purpose. The subject matter of the action having passed from the ownership and control of the grantor to his

grantees in 1921, the grantor thereby retained no property in so far as this action was concerned with which to make subsequent arrangements or agreements.

The suit to partition in accordance with the claim herein of the respondents was well taken, and the trial court is affirmed.

HILL, DONWORTH, WEAVER, and ROSELLINI, JJ., concur.

April 12, 1963. Petition for rehearing denied.