WALTER WILDMAN, *Appellant,* v. WILLIAM TAYLOR,
*as Personal Representative,* ET AL,
*Respondents.*

*Gerald L. Mikesell* and *Wilson & Mikesell,* for appellant.

*J. Tappan Menard* and *Gavin, Robinson, Kendrick, Redman & Pratt,* for respondents.

McINTURFF, C.J.—Walter Wildman appeals the superior court order granting William Taylor's motion for summary judgment. We reverse.

The relevant facts depend on which documents and testimony by affidavit are admissible under the deadman's statute, RCW 5.60.030. The underlying facts, without exclusion under RCW 5.60.030, are as follows: In 1982, Mr. Wildman and Mr. Eastcott executed two truck leases for two tractors and refrigerator trailer units. Mr. Wildman used his property and credit to finance the tractors and trailers. He borrowed the down payment from Royal Bank of Canada, securing it with farmland worth $153,000, clear of encumbrances. The remaining cost of the tractors, trailers and licenses was to be financed through Canadian Acceptance Corporation. Mr. Eastcott was to make repayment directly to the bank from monthly trucking earnings.

In 1983 Mr. Wildman executed bills of sale transferring the tractors and trailers to Mr. Eastcott. The bills of sale indicate the tractors were sold to Mr. Eastcott for $30,000 each and the trailers for $10,000 each. Mr. Wildman claims he received no consideration for executing the bills of sale and did not intend to release his interest, but gave Mr. Eastcott the bills of sale to facilitate licensing in the United States.

After the bills of sale were executed, Mr. Wildman

learned Mr. Eastcott was no longer making payments on the loans. In April 1984 he received a letter from Mr. Eastcott telling him where he could find the equipment. Mr. Wildman paid the balance of $35,616.17 on the first loan and $68,374.63 on the second loan, to obtain discharge of the farmland mortgage. Mr. Wildman commenced this cause of action in August 1984. On January 3, 1985, Royal Bank of Canada was awarded a judgment against Mr. Wildman for $170,666.13.

On January 15, 1985, Mr. Eastcott died in a vehicle accident; William Taylor was appointed personal representative of his estate. While inventorying the estate, Mr. Taylor discovered that Mr. Eastcott was the registered and legal owner of the tractors and trailers. In March and April 1985, Mr. Taylor registered the tractors and trailers in the name of the Estate of Eastcott in Iowa.

Mr. Taylor, personal representative for Mr. Eastcott's estate, contends that certain documents and affidavits establishing the above facts cannot be considered under RCW 5.60.030. The trial court held there was insufficient evidence, after exclusion of evidence under RCW 5.60.030, to make out a material issue of fact as to ownership of the vehicles. Thus, we are faced with the critical issue of whether the court's exclusion of the stated evidence under that statute was proper.

It is fundamental that a motion for summary judgment should be granted whenever the pleadings, depositions and other records on file, together with any affidavits submitted with the motion, show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. CR 56(c); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982); *Teagle v. Fischer & Porter Co.*, 89 Wn.2d 149, 570 P.2d 438 (1977); *LaPlante v. State*, 85 Wn.2d 154, 531 P.2d 299 (1975).

The statute in question, RCW 5.60.030, excludes testimony offered by interested persons whose interests or claims are adverse to the decedent regarding transactions with the decedent or statements made to him or her by the

deceased.[1] *Hampton v. Gilleland,* 61 Wn.2d 537, 542, 379 P.2d 194 (1963). The purpose of RCW 5.60.030 is to prevent interested parties from giving self–serving testimony about conversations or transactions with the decedent. *O'Connor v. Slatter,* 48 Wash. 493, 93 P. 1078 (1908). Also, the statute renders the interested litigant or witness incompetent to testify against the estate about either a transaction with the deceased or a statement made to him by the deceased. Comment, *The Deadman's Statute in Washington,* 15 Gonz. L. Rev. 501, 506 (1980).

■■ A "party in interest" prohibited from testifying is one who would gain or lose by the action in question. *In re Estate of Tate,* 32 Wn.2d 252, 201 P.2d 182 (1948); *Lappin v. Lucurell,* 13 Wn. App. 277, 292, 534 P.2d 1038, 94 A.L.R.3d 594 (1975). "Transaction" under the deadman's statute means doing or performing some business or management of any affair. *In re Estate of Shaughnessy,* 97 Wn.2d 652, 656, 648 P.2d 427 (1982). The test of a transaction with a decedent is whether the decedent, if living, could contradict the witness of his own knowledge. *Shaughnessy,* at 656; *King v. Clodfelter,* 10 Wn. App. 514, 516, 518 P.2d 206 (1974).

Mr. Wildman asserts five types of evidence should not have been excluded under the deadman's statute. The first two types offered are documents signed by the decedent,

---

[1]RCW 5.60.030 provides:

"No person offered as a witness shall be excluded from giving evidence by reason of his or her interest in the event of the action, as a party thereto or otherwise, but such interest may be shown to affect his or her credibility: *Provided, however,* That in an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, or as deriving right or title by, through or from any deceased person, or as the guardian or limited guardian of the estate or person of any incompetent or disabled person, or of any minor under the age of fourteen years, then a party in interest or to the record, shall not be admitted to testify in his or her own behalf as to any transaction had by him or her with, or any statement made to him or her, or in his or her presence, by any such deceased, incompetent or disabled person, or by any such minor under the age of fourteen years: *Provided further,* That this exclusion shall not apply to parties of record who sue or defend in a representative or fiduciary capacity, and have no other or further interest in the action."

550

Mr. Eastcott.

First, Mr. Wildman offers the written lease agreements. Two leases signed in 1982 indicate Mr. Wildman leased the tractors and trailers to Mr. Eastcott. The lease terms indicate Mr. Wildman is the owner of the equipment which he is leasing to Mr. Eastcott for a 4–year period. Rent is specified. The 1982 leases were followed by bills of sale in April 1983, reciting sale from Mr. Wildman to Mr. Eastcott for consideration of $30,000 for each tractor and $10,000 for each trailer.

Second, Mr. Wildman offers the April 26, 1984 letter from Mr. Eastcott to Mr. Wildman, which reads:

> Sorry things did not work out different, nobody wanted it to more than I did, life in the fast lane, I guess. Hope things work out better in the future for you than they have in the past. One is at the Alameda Truck Stop in Los Angeles. Two is at the El Paso Truck Stop in El Paso, Texas. Thanks a lot for giving me a chance, and again I'm sorry things didn't work out. Luck to you and take care of yourself.
>
> As Always,
> Rick

Although RCW 5.60.030 has been the subject of extensive interpretation, there is still confusion in its application. In general, RCW 5.60.030 provides that every person is competent to give evidence regardless of his or her interest in the action, except specific classes of persons. One express restriction under the statute applies to a person who sues or defends an action where the adverse party is a representative of a deceased person or derives right or title from a deceased person. However, a person suing or defending in an action against the representative of a deceased person is not incompetent to introduce all evidence; the statute only prevents the interested party from giving testimony on his or her own behalf as to a transaction with the decedent or a statement made to him or her by the deceased.

The key to understanding what an interested party is prohibited from doing under RCW 5.60.030 is the interpretation of the word "testifying". The statute, read nar-

rowly, only prohibits the interested person from testifying in his or her own behalf. "Testimony" is defined as:

> Evidence given by a competent witness under oath or affirmation; as distinguished from evidence derived from writings, and other sources. Testimony is [a] particular kind of evidence that comes to [a] tribunal through live witnesses speaking under oath or affirmation . . .

Black's Law Dictionary 1324 (5th ed. 1979). The statute does not expressly prohibit the interested party from introducing documents or other written statements by the deceased which support a claim of ownership of property by the interested party against the deceased's estate.

Mr. Eastcott's estate argues under *King v. Clodfelter, supra,* that a written contract is not admissible; therefore, written lease agreements and letters written by the decedent also are not admissible under RCW 5.60.030. There, the trial court sustained objections by the defendant as to any testimony by the plaintiff that pertained to a written contract with the deceased. *King,* at 518. When the executor then attempted to introduce the written contract into evidence, the plaintiff objected that he had been forced to present his case on a theory of implied contract in view of the executor's objection to any proof of the written contract, and therefore the executor should not be allowed to change his position when presenting a defense. The trial court refused the offer of the contract. On appeal, the court reversed, holding the executor had the right to waive the bar of the deadman's statute to protect the estate from a recovery in excess of that which the estate had agreed to pay under the written contract. *King,* at 520. Although it was not necessary to the decision, *King* at page 521 stated:

> this was not the offer of a written contract previously held invalid and unenforceable at the instance of the offering party *but the proposal of an exhibit which the court could not admit until the estate waived the statutory bar to testimony by the claimant concerning it . . .*

(Italics ours.)

We do not agree with Mr. Eastcott's estate that *King*

stands for the proposition that a written contract is not admissible under the deadman's statute unless the estate waives the bar. This issue was not before the court in *King*; rather, the *King* court was concerned with waiver of the bar of the deadman's statute.

In an early case, the court held that a written instrument executed by the decedent should not be excluded. *Kauffman v. Baillie*, 46 Wash. 248, 89 P. 548 (1907). Mr. Kauffman claimed an interest in several city lots which Mr. Wingate, deceased at the time of trial, held under deed. *Kauffman*, at 249. Mr. Kauffman produced a written instrument signed by Mr. Wingate which stated Mr. Kauffman had a one–third interest in the profit from the sale of the lots. *Kauffman*, at 249. The written instrument was admitted into evidence over the objection of Mr. Wingate's estate that Mr. Kauffman's testimony was inadmissible under the deadman's statute. *Kauffman*, at 250, 251. The court held the written instrument, conceded by the estate to be in Mr. Wingate's handwriting, was properly admitted. *Kauffman*, at 254.

Further, examination of case law indicates several cases that have not specifically ruled on admittance of documents, but in which the opinions assume admissibility because the issue was whether testimony by the adverse party should be admitted.[2]

More recently, in *Hampton v. Gilleland*, 61 Wn.2d at 543, the court said:

> One of the major purposes of this legislative enactment is to give protection to the writings and documents of a decedent or persons claiming thereunder, so that decedent's purposes in making a conveyance in writing will not be defeated by parol description of his acts and pur-

---

[2]*Denis v. Metzenbaum*, 124 Wash. 86, 213 P. 453 (1923) (a promissory note that was the subject of the action admitted); *Slavin v. Ackman*, 119 Wash. 48, 204 P. 816 (1922) (a daughter was held competent to testify as to receipt of a letter from her deceased mother promising to convey land to the daughter in return for her support; letter admitted); *Goldsworthy v. Oliver*, 93 Wash. 67, 160 P. 4 (1916) (receipts for money paid by defendant to deceased, signed by deceased, admissible).

poses after his death.

. . .

Thus, the statute serves to protect the decedent and those who take or claim under him by virtue of his writings. Indeed, the decedent and his successors by written instrument are frequently described in the authorities as "protected persons," and this designation is emphasized again and again in determining if there has been a waiver of the statute by the introduction of evidence by or on behalf of the protected party. 97 C. J. S., Witnesses § 242, *et. seq.*; 58 Am. Jur., Witnesses §§ 360, 361.

In a statement published on the occasion of the American Law Institute's adoption of the Model Code of Evidence, in which the deadman's statute was abrogated, Judson V. Falknor, Dean of the University of Washington School of Law, said this in defense of Washington's deadman's statute:

We should not forget that the statute interposes no obstacle to the establishment of a claim based upon a written contract and under present day conditions, it is probably true that the vast majority of actual good–faith contracts and business transactions are evidenced by some writing or memorandum.

18 Wash. L. Rev. 228, 231 (1943).

We hold RCW 5.60.030 is inapplicable to the introduction of written documentation, executed by the deceased, of a transaction or statement by the deceased. The written lease agreements and subsequent letter from Mr. Eastcott to Mr. Wildman are admissible under RCW 5.60.030. This does not mean that Mr. Wildman will be permitted to testify about the meaning of the lease provisions or the letter. Such testimony by Mr. Wildman would be testimony on behalf of himself as to a transaction with or statement to or by the deceased and would violate the statute. *Hampton,* at 542.

Not all testimony by Mr. Wildman will be inadmissible, however. If there is an adequate foundation laid, he may testify that he received the letter and identify Mr. Eastcott's signature on the letter. *Slavin v. Ackman,* 119 Wash. 48, 50, 204 P. 816 (1922) (daughter competent to testify as

to receipt of letter from her deceased mother promising to convey land to her daughter); *Jewett v. Budwick,* 145 Wash. 405, 260 P. 247 (1927) (identification of a deceased's signature was not prohibited by the statute). A statement by Mr. Wildman of his own feelings or impressions does not come within the ban of RCW 5.60.030. *Jacobs v. Brock,* 73 Wn.2d 234, 237–38, 437 P.2d 920 (1968) (in an action for *compensation for services to deceased, one who rendered services* permitted to explain that the reason he didn't bill decedent for services was "I was always given the impression we were getting the lake property for looking after him.").

The third piece of evidence Mr. Wildman offers is Barry Jackson's affidavit, which reads in part:

> The purpose of the loan was to make the downpayment on a truck and trailer unit with a source and time of repayment to be made by Richard Eastcott monthly from the trucking earnings. The actual cost of the truck, trailer and license was to be financed through Canadian Acceptance Corporation.
>
> . . .
>
> 5. That the payments indicated on Exhibit "A" were the only payments received until April 18, 1984, when Walter Wildman paid respectively . . . ($35,616.17) and . . . ($68,374.63) to obtain a discharge of the farmland mortgage and the release of his Duplicate Certificate of Title. The latter payment was paid solely by Walter Wildman. All other payments shown on the Statement were made by deposits to the account on trucking earnings.

Barry Jackson, an officer of Royal Bank of Canada, is an interested party because the bank financed the leased equipment for Mr. Wildman and stands to gain or lose by the action under the rationale of *In re Estate of Tate,* 32 Wn.2d at 254. The bank would gain if Mr. Wildman is found to be the owner of the equipment since the chances of repayment would be increased. Barry Jackson's testimony should be excluded to the extent it relates to a transaction with the deceased, under *In re Estate of Shaughnessy,* 97 Wn.2d at 656. However, most of the

information in the affidavit relates to a transaction between Mr. Wildman and the bank. These portions of the affidavit would be admissible under the deadman's statute.[3]

The fourth piece of evidence Mr. Wildman offers is his affidavit. It describes his involvement with Mr. Eastcott in a lease arrangement for the equipment, including the financing arrangements through Bank of Canada and Canadian Acceptance Corporation. It also sets forth Mr. Wildman's purpose for giving Mr. Eastcott the bills of sale—to facilitate licensing in the United States. Further, it asserts lack of consideration for the bills of sale.

Clearly, this affidavit is offered by an interested party, Mr. Wildman, per *In re Estate of Tate, supra* at 254. Also, portions of the affidavit relate to a transaction with the deceased under *In re Estate of Shaughnessy, supra* at 656, since the lease arrangement and bills of sale are central to Mr. Wildman's claim of ownership in this case. We hold these portions of the affidavit should be excluded under the deadman's statute.

Fifth, Mr. Wildman offers interrogatories 1 and 4 requested by the estate and answers thereto by Mr. Wildman. The answer to interrogatory 1 alleges Mr. Eastcott failed to make payments under the terms of the leases. The answer to interrogatory 4 alleges bills of sale were given at the request of Mr. Eastcott and that no consideration was given by him for the bills of sale.

*McGugart v. Brumback,* 77 Wn.2d 441, 449, 463 P.2d 140 (1969) held the party protected by the deadman's statute does not waive the bar of the deadman's statute by taking written interrogatories unless the protected party

---

[3]Further, some information in the affidavit may be admissible under the business records exception which admits, under RCW 5.60.030, books and records kept in the ordinary course of business. *Goldsworthy v. Oliver,* 93 Wash. 67, 70–72, 160 P. 4 (1916); *Ah How v. Furth,* 13 Wash. 550, 554, 43 P. 639 (1896); *Vogt v. Hovander,* 27 Wn. App. 168, 174, 616 P.2d 660 (1979). (Even assuming continuing validity of the business records exception to deadman's statute, account book recording payment made pursuant to a transaction with decedent is not admissible under RCW 5.60.030 if the book is not kept in the ordinary course of business.)

waives the statute's protection by introducing the evidence at trial. Mr. McGugart brought the action to recover compensation for goods and services rendered the decedent during his lifetime. The decedent's estate submitted written interrogatories to Mr. McGugart, which he answered, but the estate did not introduce the answers at trial. *McGugart,* at 442, 443. The rationale of the court was that the interrogatories are a means of discovery which may not be intended to be used as evidence and that all parties have the right to use these devices, which are essential to a fair trial. *McGugart,* at 445. To hold that the taking of a deposition constituted waiver of the deadman's statute would force the decedent's representative to choose between the protections of the deadman's statute or the benefit of the discovery processes. *McGugart,* at 446.

In this case no waiver of the deadman's statute occurred because the interrogatories were not introduced as evidence by the estate. We hold proper application of the deadman's statute requires exclusion of the interrogatories and answers from evidence in considering the motion for summary judgment.

To decide if the admissible evidence raises a material question of fact regarding ownership of the vehicles, we must view the facts in a light most favorable to the party opposing the summary judgment motion, here Mr. Wildman. *Wilson v. Steinbach,* 98 Wn.2d at 437. After exclusion of evidence inadmissible under the deadman's statute, the material facts are as Mr. Wildman alleges, with the exception that we may not consider his testimony that no consideration was received in exchange for the bills of sale despite the consideration recited therein.

We have considered all Mr. Wildman's evidence admissible under the deadman's statute and conclude a genuine issue of material fact of ownership is raised. The initial lease arrangement was followed by bills of sale reciting consideration. In *Crawford v. Welch,* 8 Wn. App. 663, 664, 508 P.2d 1039 (1973), the court held that certificates of registration and title of an automobile were only prima

facie evidence of ownership which could be rebutted. Likewise, the factual situation of physical possession of vehicles is only a fact to be taken into consideration and is not conclusive on the issue of ownership. *Crawford,* at 664. If questions of fact are raised, they are to be resolved by the trial court based on the veracity and credibility of witnesses. *Crawford,* at 664. Here, the bills of sale and registration in the name of the estate, albeit after the suit was commenced, are prima facie evidence of ownership by the estate.

Mr. Eastcott's estate claims that bills of sale and registration raise a presumption of ownership that can only be rebutted by clear and convincing evidence. We do not agree. In *Gams v. Oberholtzer,* 50 Wn.2d 174, 310 P.2d 240 (1957), a registered owner was found not to be the true owner of a car because evidence was introduced to show that another person put up consideration for the car. The court found clear and convincing evidence was introduced to rebut the presumption of ownership in the registered owner *for purposes of vicarious liability. Gams,* at 177. The court did not hold that in a suit between vendor and vendee a presumption arose nor that in such a circumstance clear and convincing evidence was required. Other cases have distinguished the amount of proof required as between vendor and vendee and proof necessary to establish ownership against a third party.[4]

The written lease agreements and Mr. Eastcott's own words in the April 26, 1984 letter are sufficient to raise a material issue of fact regarding ownership. It is a valid inference that Mr. Eastcott would not have written Mr.

---

[4]*Junkin v. Anderson,* 12 Wn.2d 58, 74–76, 120 P.2d 548, 123 P.2d 759 (1941) (between parties, sale valid despite fact certificate of registration remained in vendor's name, judgment creditor not a third party that the registration statute was designed to protect); *Hartford v. Stout,* 102 Wash. 241, 172 P. 1168 (1918) (distinguished proof required to establish ownership between father and son when title was in the father's name from a situation where the son would be estopped to deny the father's title as to third parties). We find no authority requiring clear and convincing evidence to overcome a prima facie case made out by a certificate of registration when ownership between vendor and vendee is in issue.

Wildman to inform him of the location of the tractors and trailers and to express remorse over their business relationship, if he had purchased them from Mr. Wildman. Again, however, Mr. Wildman may not testify that he did not receive the consideration recited in the bills of sale, for this would violate the deadman's statute.[5]

We hold there is sufficient admissible evidence to make ownership a material issue of fact to be resolved by the trial court.

The judgment of the Superior Court is reversed.

MUNSON and THOMPSON, JJ., concur.

---

[5]*Denis v. Metzenbaum*, 124 Wash. 86, 87–88, 213 P. 453 (1923) (an executor's action on note given to deceased by co-signers, RCW 5.60.030 excludes testimony of one signer stating that he signed only as surety without consideration, not as maker of note).