[No. 13312. Department One. September 27, 1916.]

SAMUEL GOLDSWORTHY et al., *Appellants*, v. R. J. OLIVER et al., *Respondents*.[1]

WITNESSES—COMPETENCY—"TRANSACTION WITH PERSON SINCE DECEASED." In an action by executors for money collected by defendant for the deceased, the defendant's identification of deceased's signature to receipts for money paid by defendant is not within Rem. 1915 Code, § 1211, excluding the testimony of a party in interest in his own behalf as "to any transaction had by him" with the deceased.

SAME. In such a case, the testimony of the defendant as to the existence and loss of a receipt signed by the deceased which was not produced is inadmissible as being testimony of "a transaction had with the deceased," under the statute.

EVIDENCE—DOCUMENTARY EVIDENCE—BOOKS OF ACCOUNT — "SHOP-BOOK"—"TRANSACTION WITH PERSON SINCE DECEASED." An account book, kept by defendant, a business man, showing only sums paid by him to plaintiff's decedent at various dates, apparently all entered at the same time, and not kept in the ordinary course of defendant's business, is not a "shop-book," and is inadmissible, as it appears on its face to be a self-serving declaration, and an attempt to evade the statute excluding testimony of transactions had with the deceased.

Appeal from a judgment of the superior court for Kitsap county, French, J., entered May 8, 1915, in favor of the defendants, in an action for money received, tried to the court. Reversed.

*Thomas Stevenson* and *Lewis & Legg*, for appellants.

*F. W. Moore*, for respondents.

[1]Reported in 160 Pac. 4.

MOUNT, J.—This action was brought by the executors of the estate of Peter Mack, deceased, against R. J. Oliver and wife, to recover $6,868.50, alleged to be due upon the purchase by the defendants of a promissory note which was owned by Mr. Mack in his lifetime. The answer of the defendants admitted the purchase of the note, but denied that it had not been paid, and alleged payment. The court, upon these issues, proceeded to the trial of the case, and concluded from the evidence submitted that the defendants were indebted to the estate of Peter Mack, deceased, in the sum of $89.75, and entered a judgment therefor. The plaintiffs have appealed from that judgment.

It appears without dispute that, in November, 1911, Peter Mack held a note for $10,000, signed by William Bremer and A. G. Benbennick. At that time, several payments had been made upon the note, so that there was then due thereon $8,468.50. Mr. Mack agreed with Mr. Oliver that, if he would take the note and collect it, he might retain from the amount collected $500, and whatever costs and expenses he was to in making collection. This was agreed to, and on November 2, 1911, Mr. Mack executed a power of attorney authorizing Mr. Oliver to receive and collect the note. Mr. Oliver thereupon collected the amount due upon the note, viz.: $8,468.50.

It is not claimed that any of this money was paid to Mr. Mack at that time. But Mr. Oliver, on November 6, deposited in the Citizens' Bank of Bremerton $100 to the credit of Mr. Mack. From that time on until January 6, 1914, Mr. Oliver made a number of deposits in the bank to the credit of Mr. Mack. These deposits altogether amounted to $950. Mr. Mack in the meantime drew checks against these deposits. On March 19, 1914, Mr. Mack died, leaving $55 in the bank to his credit. He left a will, leaving his estate to the plaintiffs herein, who are the executors of his estate.

At the trial, Mr. Oliver, in order to show payment, which was then the only issue in the case, testified that he had made

these deposits in the bank. He was shown a receipt for $220 dated January 8, 1912. He testified that he was acquainted with the signature of Mr. Mack, and that Mr. Mack had signed the receipt. He was also shown another receipt dated May 28, 1912, for $1,650, and identified the signature thereto as the signature of Mr. Mack. He also testified that he had another receipt for $1,000 dated April 5, 1912, which bore the same signature as the receipts already offered, but that this receipt had been lost. Objections were made to the introduction of the two receipts of January 8 and May 28, 1912, upon the ground that the defendant was incompetent to testify because the receipts involved a transaction between the deceased and the defendant which was prohibited by Rem. 1915 Code, § 1211, to the effect that in an action or proceeding where the adverse party sues or defends as executor, administrator, or legal representative of any deceased person, then a party in interest shall not be admitted to testify in his own behalf as to any transaction had by him with, or any statement made to him by, such deceased or insane person.

We are of the opinion that the identification of the signatures to these receipts does not come within the terms of the statute, because such identification is not a transaction with the deceased or statement made by him. Furthermore, even if the identification of these signatures may be held to be a transaction between a deceased person and the witness, other witnesses upon the trial identified the signatures of Mr. Mack. We are satisfied, therefore, that as to the receipt for $220 and the receipt for $1,650, the court properly admitted them in evidence.

The receipt for $1,000 was not produced. The witness testified that this receipt was lost. We are satisfied that the court erred in receiving this evidence. No other person testified to having seen the receipt. The giving of the receipt for $1,000 to Mr. Oliver by Mr. Mack, if it was so given, was clearly a transaction between these two persons. The re-

ceipt itself, if in existence, would be evidence of the fact that it was given. But we think, in the absence of the receipt, it would not be competent for Mr. Oliver to testify that such a receipt had been given, or was in existence.

This court in *White v. Walker,* 84 Wash. 652, 147 Pac. 409, held, in an action brought to establish a lost deed, that the person to whom the deed was given could not testify that she had received it, because that would be a transaction between such person and the deceased person. For the same reason it is clear that the receipt in this case could not be proven by the person to whom the receipt was given without production of the receipt itself. We are of opinion, therefore, that the court erred in receiving this evidence in regard to the lost receipt.

In order to show further payments, Mr. Oliver produced a book in which he testified he kept the account between himself and Mr. Mack. He testified that the entries made in this book were made about the times therein stated, and that they were correct. This book contained no other account. It shows upon its face that the items therein entered were all made in the same handwriting, in green ink, and apparently all made at the same time. The account begins, according to the statement contained in the book, on June 9, 1911. It extended, upon its face, over dates up to March 2, 1914. It shows upon its face only cash debits against Mr. Mack, and that, between these dates, Mr. Mack had received more than the amount owing from Mr. Oliver by some $24. This book was received in evidence over the objection of the appellant. In receiving the book in evidence, the trial court was controlled by the rule in *Ah How v. Furth,* 13 Wash. 550, 43 Pac. 639. In that case Ah How, who had been working for the estate of Yesler, deceased, had kept the account of his work, and of moneys received from Mr. Yesler. His account book was received in evidence in that case; and this court held that such book was not within the statute. The account there referred to was kept by Ah How, who apparently had

no other business than the business of cooking for Mr. Yesler. The account book probably showed the dates on which he labored, and the pay which he had received from Mr. Yesler.

We think that case goes to the limit of the rule, and that the rule ought not to be further extended. In this case the book offered in evidence was kept by a man who was engaged in business in the city of Bremerton. If he was not at the time this transaction occurred, he had been before in the grocery business. He was a man of affairs, was director in the Bank of Bremerton, and was apparently a careful business man.

The book contained one item of credit for $8,468.50, obtained upon the note. The debits were all cash items varying from $5 to more than $1,000. A number of items are for $100; several are for $500, and $400, and $300. There was no evidence that any of these payments were made by the defendant Oliver, except the book itself.

As we have said, this book does not appear upon its face to be a tradesman's book, kept in the line of business of Mr. Oliver, but is at most a private account, kept by him for moneys advanced to Mr. Mack during his lifetime.

The rule is stated in 17 Cyc. at p. 381, as follows:

"But as a general rule books of account of a party are not admissible in his own favor to prove charges for 'money paid' or 'money lent,' or cash items or dealings between the parties generally, since these charges are not usually such as are made in the ordinary course of business, and since other and better evidence of the transaction usually exists or might reasonably be called for by the party making the advance. This rule has been modified by some of the decisions, however, and it is held that where money charges are made in the banking business, or otherwise as a matter of fact in the ordinary course of business, the accounts will be admissible under the shop-book rule. Moreover, the effect of the decisions in some jurisdictions is to extend the rule permitting proof of the delivery of goods sold and the performance of labor by shop-books so as to include charges of sums of

money not exceeding a certain sum, or small sums not definitely fixed by law.

"To be admissible under the shop-book rule the book must as a general rule contain charges by one party to the action against the other and the entry must be made with the intent to make a charge. Thus books of entries of work done have been held inadmissible where the primary object of the entries was to enable the party to settle with his employees in the work and not to charge the work against the adverse party. So a book of credits and not of charges kept by a purchaser or employer is inadmissible. So a party's books are inadmissible to establish a negative in his favor by showing the absence of affirmative entries."

We think, under this rule, that the book here offered was not admissible because it was clearly not a shopbook. It appears upon its face that it was not a book kept in the ordinary business of Mr. Oliver. It does not appear true upon its face by reason of the fact that it appears to have been drawn up all at one time and not extending over a period of two years. We think it appears upon its face to be a self-serving declaration. There was opportunity here for better evidence of the transactions than the book itself. It appears from the record beyond dispute that Mr. Oliver, as we have seen above, was a man of affairs. He was a business man of ability, accustomed to banks and banking business. He was a director in a bank. Peter Mack, during his lifetime, was a bachelor. He lived in filth. He was intoxicated a great portion of his time. In short, Peter Mack, during the last years of his life, was irresponsible on account of his habits and mode of living. It seems to us incompatible with good business judgment, which we must attribute to Mr. Oliver, that he would advance four and five hundred dollars at a time to Mr. Mack without issuing his check therefor, or without taking a receipt from Mr. Mack. And yet, if this book is admissible in evidence, and may be received, we must conclude that Mr. Oliver advanced as much as $3,000 to Mr. Mack in that way.

It is plain from the statute itself that the payment of these different amounts would be transactions between the deceased and Mr. Oliver. He cannot, upon the witness stand, testify that he made these payments. To admit this book in evidence would, in effect, authorize a person before the trial of an action to write a statement upon a paper or in a book, and then by testifying that the statement was correct and the items were entered at the time of the different dates therein, make a book admissible in evidence as a trade-book. In other words, to declare this book, under the circumstances, admissible is to declare an easy mode of avoiding the statute. We are satisfied that the rule in the *Ah How* case should not control this case, and that the admission of this book in evidence was error.

This case is triable here *de novo*. The record is before us. It shows upon its face, and is admitted, that the defendant was to deduct $500 from the amount collected on the note. He was also to receive $151.20 in costs of collection. The evidence, besides his own testimony, shows that the defendant deposited in the bank $950 to the credit of Mr. Mack. The evidence further shows that, at the time the money was collected, Mr. Mack, in the presence of Mr. Moore, agreed that Mr. Oliver should deduct from the amount collected $900 then owing by Mr. Mack to Mr. Oliver. The record shows that Mr. Mack gave to Mr. Oliver a receipt for $220 and $1,650. It was not shown, and is not claimed, that there was any other transaction on which Mr. Oliver was indebted to Mr. Mack. It can, therefore, be presumed that these receipts were given for money advanced from this $8,468.50 owing by Oliver to Mack.

It was also shown by disinterested witnesses that, during the last sickness of Mr. Mack, and after his death, Mr. Oliver advanced money to pay for articles furnished to Mr. Mack before his death, for doctor bills, etc., and after his death, for funeral expenses, the sum of $726.50. These added together make a total payment from Mr. Oliver to Mr. Mack of

$5,097.70. Deducting this from the amount of money Mr. Oliver owed to Mr. Mack upon the note, leaves $3,370.80. We think it plain from the record here that the plaintiffs are entitled to a judgment against the respondents for that amount.

The judgment is therefore reversed, and the cause remanded with instructions to the superior court to enter a judgment against the defendants for $3,370.80,. with interest from the date the complaint was filed.

MORRIS, C. J., ELLIS, and CHADWICK, JJ., concur.