[No. 13971.   Department Two.   June 22, 1917.]

E. A. Sanborn, *Respondent*, v. Grant A. Dentler,
*as Guardian etc., Appellant.*[1]

Pleading—Bill of Particulars—Excuse—Ability to Furnish.
In an action for a physician's services, upon demand for a bill of
particulars, an itemized statement of the value of the medicines
furnished is not excused by an allegation in the amended complaint
that the exact amount and fair value of medicines given at each
visit could not be positively ascertained but aggregated in excess of
$500; and evidence thereof must be excluded, under Rem. Code,
§ 284, so providing in case of failure to furnish the bill of par-
ticulars.

Tender—Deposit in Court—Effect.   In an action for the services
of a physician, the defendant, by deposit in court of a sum of money
admitted to be due, admits that the plaintiff was a qualified and
licensed practicing physician, and cannot urge failure of proof in
that regard.

Same.   A deposit in court, under Rem. Code, § 486, providing
that, if plaintiff refuses to accept the sum in discharge of the action
and shall not recover a larger amount, he shall pay all the costs
that may accrue from the time of the deposit, is simply a provision
for making tender after commencement of the action, and admits
the amount due, with the same effect as a tender.

Witnesses—Transactions With Person Since Deceased or In-
competent.   In an action for a physician's services, original entries
in the plaintiff's properly identified account book, containing mem-
oranda as to diseases and conditions as they developed during the
treatment, are not inadmissible as evidence of a party in interest as
to a transaction had by him when suing a deceased or incompetent
person, excluded by Rem. Code, § 1211.

Depositions—Objections to Evidence—Waiver.   Where defend-
ant was present at the time of taking plaintiff's deposition and per-
mitted entries from an account book to be read into the evidence
without objection or demanding the annexation of the book to the
deposition, he cannot object at the trial to the secondary nature of
the evidence.

Appeal from a judgment of the superior court for Pierce
county, Clifford, J., entered June 26, 1916, upon the verdict

[1]Reported in 166 Pac. 62.

of a jury rendered in favor of the plaintiff for $2,000 for services as a physician. Reversed, unless $500 is remitted.

*Grant A. Dentler,* for appellant.

*Rickabaugh & McElroy,* for respondent.

HOLCOMB, J.—In this action respondent sued upon an account to recover $3,500 for medical services and medicines furnished to Mr. and Mrs. Benjamin F. Woodman, citizens of Washington, while sojourning in the state of Massachusetts. A verdict was rendered for $2,000. Motions for non-suit at the conclusion of plaintiff's case and for a new trial after verdict were made and denied.

The services alleged to have been performed covered a period extending from about October 1, 1911, to April 7, 1912. Mrs. Woodman died about January 25, 1912, while being treated in Massachusetts, and shortly after, April 7, 1912, Mr. Woodman returned to Washington, and thereafter was adjudged to be insane and the appellant was appointed his guardian. This suit was instituted against the guardian of the estate of the insane person. Respondent alleged, in his original complaint, that the services were to be rendered and medicines furnished to Mr. and Mrs. Woodman under a sort of special employment by Mr. Woodman to render such services and attend to Woodman and wife at any and all times to the exclusion of all other business, and that such services were so rendered and medicines so furnished; and that, by reason thereof, the services were lumped in the sum of $3,500, which was intended to cover all the physician's time, medicines furnished, and consultations. It was also alleged that respondent left a practice at Somerville, Massachusetts, and that the greater portion of the services rendered for Mr. and Mrs. Woodman were in the city of Boston, requiring much time in going to and from Somerville to attend the patients in Boston.

Shortly after the institution of this action, appellant deposited with the clerk of the court the sum of $761.55, and

notified respondent thereof, and that the same was deposited under the provisions of § 486, Rem. Code. Subsequently, appellant moved to require the respondent to make his complaint more specific, which motion the court granted. Respondent then served and filed an amended complaint, setting out in detail each and every visit made to Mr. and Mrs. Woodman and each and every other service performed and the value thereof, and set out in paragraph seven of the amended complaint a very long list of medicines alleged to have been furnished the patients; alleging therein that the exact amount of medicines given at each visit or its value cannot be positively ascertained, but that from two to six prescriptions for both Benjamin F. Woodman and his wife were made up from the medicines specified, and that the fair value of such medicines cannot be given for each visit, but would aggregate in excess of $500, compounded and delivered. Appellant thereupon moved to strike or, in the alternative, to make more specific paragraph seven of the amended complaint by stating what medicine and the quantity thereof plaintiff furnished Benjamin Woodman and what medicine and the quantity thereof he furnished the wife of Benjamin Woodman upon each visit to them, and what was the fair and reasonable value of the medicine furnished at each such visit to either or both of them. This motion the court denied, and this is one of the errors relied upon by appellant.

It is contended by respondent that the requiring of a bill of particulars is a matter of discretion with the court, and that respondent was excused from furnishing the bill of particulars of these items under the allegation in connection therewith that the exact amount of medicine given at each visit, or its value, could not be positively ascertained, and that the fair value of such medicine given each visit could not be stated.

It is true that, in many cases, the requirement of a bill of particulars is a matter of discretion with the court; but under our practice, under Rem. Code, § 284, when an account is

sued upon, unless the party, within ten days after demand therefor in writing by the adverse party, shall deliver to the adverse party a verified bill of particulars of the items of the account, *he is precluded from giving evidence thereof*, and in case an itemized account stated is defective, the court may order a further account. It was shown at the trial that the respondent kept an account book with all his accounts shown therein, and that the particular items of account with Mr. and Mrs. Woodman were kept in that book in the ordinary course of business, together with other accounts, and all the items of the visits and memoranda as to the nature of the ailments with which the patients were suffering were kept therein. In *Plummer v. Weil*, 15 Wash. 427, 46 Pac. 648, we held that an allegation in connection with the bill of particulars, to the effect that it was impossible for the party relying thereon to comply with the order of the court any better than he had already done, or to make the bill of particulars any more specific on the points directed in the order of the court, furnished no excuse; and it was stated that the bill of particulars furnished was insufficient and "its insufficiency cannot be excused upon the ground that plaintiff kept no books and cannot specify the services or state their value. He assumed the burden of so doing when he brought his action in the present form. . . . 'The failure to keep an account of these services is the fault of the plaintiff, and he must suffer for it, if any one'."

Again, in *Moore v. Scharnikow*, 48 Wash. 564, 94 Pac. 117, it was said:

"In a mercantile account, or in any account which is made up of several and distinct items, it is proper for the court to require that the value of each article be separately stated. So also a physician, since he bases the value of his services on the number of visits made the patient or the number of prescriptions given him, may be required to set out in his bill of items the charge made for each visit, or each prescription."

It certainly was as possible for respondent to itemize the quantity and value of the medicine furnished by him at each visit, when making his entries in his book, as it was for him to itemize the number and length of his visits, the nature of the other services performed by him, and the *kind* of medicines furnished. If he could not, he is the one who should suffer. Under the statute heretofore quoted, we think his evidence as to the amount and value of the medicines furnished should have been excluded for his failure to furnish, upon demand, a bill of particulars thereof.

There was no evidence furnished by respondent that he was, at the times mentioned in his amended complaint, a regularly qualified and practicing physician in the state of Massachusetts. For this reason, appellant claims that a nonsuit should have been granted, since it was necessary for respondent to prove his qualifications to practice in order to recover. Respondent testified by deposition that he had practiced in the state of Massachusetts something more than forty years. It is contended that, by the laws of Washington, respondent could not recover without proving that he was admitted and licensed to practice. While this may be true, it must be considered that appellant, by depositing a sum of money which he admitted to be due to respondent, admitted that respondent was entitled to recover something as a physician, having sued as a physician, and that appellant is not now in a position to urge that failure of proof.

In this connection it is contended by appellant that the deposit is not the same as a tender, in order to avoid the force and effect of the law relating to a tender as stated in *Young v. Borzone*, 26 Wash. 4, 66 Pac. 135, 421. There it was held that a plea of tender with payment into court conclusively admits plaintiff's cause of action as to the amount tendered. In what respect a deposit in court for the benefit of the plaintiff is different from a tender, appellant does not make entirely clear. The law provides that a tender, made before action, and the bringing of the amount of the tender

into court, entitles the defendant to recover all costs of suit, if the allegations in regard to tender be found true; and the statute, Rem. Code, § 486, requiring deposit in court, provides that the defendant in any action pending shall at any time deposit with the clerk of the court, for the plaintiff, the amount which he admits to be due, together with costs that have accrued, and notify the plaintiff thereof, and if plaintiff shall refuse to accept the same in discharge of the action, and shall not afterwards recover a larger amount than that deposited with the clerk, exclusive of interest and cost, he shall pay all costs that may accrue from the time such money was so deposited. This is simply a provision for making tender by paying into court after the action has been commenced, and by the terms of the statute itself, it amounts to an admission that there is the amount due that has been deposited. This has the same effect as a tender, strictly considered, of admitting that the plaintiff is entitled to recover in some sum. It does not admit that the contract is as alleged by plaintiff or that the basic measure of recovery is as alleged. *Young v. Borzone, supra.* This contention we consider untenable.

It is next contended that, under the provisions of Rem. Code, § 1211, excluding evidence of a party in interest as to any transaction had by him or any statement made to him when suing a deceased or insane person, all the evidence of appellant as to transactions between him and B. F. Woodman, the insane person, should have been excluded. The testimony of respondent was taken in Massachusetts by deposition. The testimony as to the nature of the employment of respondent was taken by depositions of other witnesses, and the evidence thereof given by respondent in his deposition was excluded at the trial. Respondent testified to his account book, and read therefrom the items of the account kept by him in the book. Appellant himself was there present, acting as attorney for himself and his ward. He conducted the cross-examination of the witness at the taking of the deposition.

The deposition shows that he examined the book and questioned respondent as to certain entries he found therein, and during the cross-examination, the following questions and answers were made:

"Question: Doctor, you kept a book, didn't you, of the visits and services? Answer: Yes. Q. And in testifying in your direct examination in reference to these services and what you did, you read from that book? A. Yes. Q. You have that book with you? A. Yes, right here. Q. And in that book you kept other accounts besides this? A. Yes. Q. And in direct examination you also read from certain memorandums as to the afflictions and diseases with which Mr. and Mrs. Woodman were suffering? A. Yes. Q. The memorandums were made at the time you observed the sickness? A. Yes. Not all at once, as there were conditions as they went along. Q. As the conditions developed you made additions? A. Yes."

During the direct examination of respondent at the taking of the deposition, in answer to a question, he said: "These are the original entries from my book and I have a right to read these." He then proceeded to read the items contained in his book.

It is thus shown that the book was properly qualified and would have been admitted in evidence under the rule announced by this court in *Ah How v. Furth*, 13 Wash. 550, 43 Pac. 639. Appellant, being there present at the taking of the deposition, made no objection to the reading of the contents of the book into evidence in the deposition, and did not call for the annexation of the book to the deposition as an original exhibit. At the trial, he objected to the reading of any of the answers given by respondent, and a great deal of the testimony given by respondent not constituting strictly the reading of entries found in the book was excluded, the court saying that the statute seemed to draw the line at anything that a deceased or insane person might dispute if living or sane. It is contended, however, that the court afterwards frequently permitted answers of the respondent to

questions which constituted, to a great extent, testimony as to transactions had by him with Mr. Woodman. Among other things, the following is complained of: Respondent was asked, "For what purpose did Mr. Woodman call at his office?" This was objected to at the trial on the ground that the plaintiff was disqualified to testify to any conversation or transaction with Mr. Woodman. The objection was overruled and the answer was read, as follows: "To get me to examine him and prescribe for him." The question then followed: "Did you make an entry in your book of that charge?" The answer was "Yes." This is the most nearly objectionable of any of the testimony of the respondent by deposition that was admitted by the court. This ruling was made by the court just prior to his ruling that nothing could be read and considered by the jury except the entries from the book testified to by the respondent. In view of this, we do not think it material, or that it probably influenced or prejudiced the jury in any way as evidence which they considered which was incompetent.

In the *Ah How* case, *supra*, it was held that the testimony of respondent, that he worked at the house of the intestate and as to the character of the work performed by him, was not testimony in relation to a transaction had by him with, or any statement made to him by, such intestate. "Such testimony related solely to acts of the witness alone and was entirely competent;" citing authorities. For the same reason, we consider that the testimony by deposition of this respondent, which was admitted, came within the same rule. These book entries, together with other corroborating testimony independent of the respondent's testimony, covered every material feature of respondent's case sufficiently to entitle him to recover something in his action.

Nor do we think that the objection of appellant to the testimony of respondent as to his book entries, by reading them into the deposition instead of producing the book, can now avail him. He stood by and permitted entries in the

book to be read into the evidence at the taking of the deposition at a very great distance from the scene of the trial. If he had then objected to the secondary evidence or demanded the annexation of the book to the deposition, the question might have been obviated. The rule is well established that, if a party present at the taking of a deposition allows secondary evidence to be received without objection, he is precluded thereafter from raising such questions. 6 Ency. Plead. & Prac., pp. 588-599.

We find no other error in the record sufficient to justify a reversal, except the error as to the bill of particulars. That was a substantial and prejudicial error and would justify a reversal. We believe, however, that justice will be done to both parties if respondent be allowed to remit from the verdict the sum of $500, covered by the paragraph in his complaint concerning the furnishing of medicines, and allow the recovery to stand for the remainder of $1,500, with interest and the costs below:

It is therefore ordered that, if respondent shall remit the sum of $500 from the recovery below, within thirty days, the judgment shall stand for the sum of $1,500, with interest from June 26, 1916, and the costs in the court below. If respondent shall fail and refuse so to remit within the time specified, a new trial shall be granted. Appellant will recover costs of appeal.

ELLIS, C. J., MOUNT, PARKER, and FULLERTON, JJ., concur.