[No. 61023-1. En Banc. November 10, 1994.]

ANDREW ERICKSON, *Individually and as Personal Representative*, ET AL, *Respondents*, v. ROBERT F. KERR, M.D. P.S., INC., ET AL, *Petitioners*.

*Lane Powell Spears Lubersky*, by *Craig L. McIvor* and *Michael B. King*, for petitioners.

*C.F. Vulliet & Associates, C.F. Vulliet*, and *Susan V. Wright*, for respondents.

Dolliver, J. — Petitioner, Dr. Robert Kerr, seeks review of the Court of Appeals reversal of a jury verdict in his favor in a medical malpractice suit arising from the suicide of Phillipa Erickson. Andrew Erickson commenced an action as personal representative of the estate and a wrongful death action on behalf of himself and his son, Craig Erickson. The suit alleges Dr. Kerr was negligent in failing properly to diagnose and treat Mrs. Erickson's clinical depression. We affirm in part and reverse in part.

Dr. Kerr was Phillipa Erickson's family physician since 1969. Until her suicide on March 9, 1987, Dr. Kerr treated Mrs. Erickson for high blood pressure, insomnia, menopause, and mild depression. He prescribed various medica-

tions for these conditions, including Seconal, a barbiturate used to induce sleep, Halcion, a benzodiazepene similar to Valium, Inderal and Tenormin, high blood pressure medications, estrogen, and Asendin, an antidepressant.

During this time, Mrs. Erickson periodically complained of depression. Dr. Kerr felt the depressed mood was a reaction to the Inderal or related to stress at home. In March 1986, based on Mrs. Erickson's continuing complaints of depression, Dr. Kerr prescribed the antidepressant, Asendin. Around this time, Mrs. Erickson was also taking increased dosages of Halcion. The recommended dosage for adults is .25 to .50 milligrams per day. In May 1986, her dosage was increased from .50 milligrams per day to .75 milligrams per day. Depression is a side effect of Halcion, and its manufacturer recommends that Halcion not be prescribed for more than a month to avoid dependence.

At the end of 1986 and in early 1987, Mrs. Erickson was visiting Dr. Kerr's office frequently for checkups, sometimes on a biweekly basis. During this time, family and friends noticed Mrs. Erickson becoming withdrawn. Mr. Erickson became concerned about his wife's health and made several phone calls to Dr. Kerr who responded that he was treating her for depression and would adjust her medication as needed. Mr. Erickson also contacted Dr. Sako, Mrs. Erickson's dentist, who advised him she needed a thorough physical.

On February 6, Dr. Kerr discontinued the Asendin, and on February 20, he wrote her a prescription for a 3-month supply of Seconal. On March 6, he renewed her prescription for Halcion and adjusted her blood pressure medication. Three days later on March 9, 1987, Mrs. Erickson committed suicide by overdosing on Seconal.

Following Mrs. Erickson's death, Dr. Kerr asked Andrew Erickson how his wife was doing, apparently forgetting she had died.

The Ericksons brought suit alleging Dr. Kerr was negligent in failing to diagnose and treat Mrs. Erickson's clinical depression. The negligence claim was based primarily upon

Dr. Kerr's medical records chronicling his treatment of Mrs. Erickson.

The Ericksons moved in limine, pursuant to the deadman's statutes, RCW 5.60.030, to exclude any testimony by Dr. Kerr regarding any conversations he had with Mrs. Erickson. The trial court denied the motion, ruling the Plaintiffs had to rely on Dr. Kerr's medical records as part of their case in chief, and thus waived the statute's protection. The trial court also admitted testimony from Mrs. Erickson's friend and neighbor, Anne DeLaurenti-Newton, concerning the Ericksons' marriage and excluded evidence regarding Dr. Kerr's failure to remember Mrs. Erickson's death.

The trial court gave the pattern instructions defining a physician's negligence and duty of care, but did not give three additional instructions proposed by the Ericksons.

The jury found Dr. Kerr was not negligent, and both parties appealed. The Court of Appeals reversed, and this court granted Dr. Kerr's Petition for Review. The Ericksons' cross petition was treated as an answer raising additional issues. The Ericksons moved to submit a reply to Dr. Kerr's supplemental brief and filed an emergency motion to supplement the record. These motions were passed to the merits.

The first issue is whether the Ericksons waived the protection of the deadman's statute, RCW 5.60.030, by introducing Dr. Kerr's medical records concerning his treatment of Mrs. Erickson. RCW 5.60.030 provides:

> [I]n an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, or as deriving right or title by, through or from any deceased person, . . . then a party in interest or to the record, shall not be admitted to testify in his or her own behalf as to any transaction had by him or her with, or any statement made to him or her, or in his or her presence, by any such deceased . . . person . . ..

The purpose of the statute is to "prevent interested parties from giving self-serving testimony about conversations or transactions with the decedent." *Wildman v. Taylor*, 46 Wn. App. 546, 549, 731 P.2d 541 (1987). The statute may be waived if the adverse party introduces testimony on

direct or cross examination regarding the transaction in question. *Zvolis v. Condos*, 56 Wn.2d 275, 277, 352 P.2d 809 (1960); *O'Steen v. Estate of Wineberg*, 30 Wn. App. 923, 935, 640 P.2d 28, *review denied*, 97 Wn.2d 1016 (1982). *See generally* 5A Karl B. Tegland, Wash. Prac., *Witnesses* § 216 (1989 & Supp. 1994). The issue is whether the introduction of documentary evidence, in this case Dr. Kerr's medical records regarding his treatment of Mrs. Erickson, also constitutes a waiver of the deadman's statute.

In the past, we have held that records kept in the ordinary course of business are not excluded under the deadman's statute. *See Ah How v. Furth*, 13 Wash. 550, 43 P. 639 (1896); *Goldsworthy v. Oliver*, 93 Wash. 67, 73, 160 P. 4 (1916); *Sanborn v. Dentler*, 97 Wash. 149, 154-57, 166 P. 62, 6 A.L.R. 749 (1917). *See also Vogt v. Hovander*, 27 Wn. App. 168, 616 P.2d 660 (1979). The objective nature of such records made prior to any motive for fabrication obviates the statute's protection against self-serving statements. *See Goldsworthy v. Oliver, supra.*

We have also held the deadman's statute does not apply to documents written or executed by the deceased. *See Hampton v. Gilleland*, 61 Wn.2d 537, 543, 379 P.2d 194 (1963); *Denis v. Metzenbaum*, 124 Wash. 86, 213 P. 453 (1923); *Slavin v. Ackman*, 119 Wash. 48, 204 P. 816 (1922); *Goldsworthy v. Oliver, supra; Kauffman v. Baillie*, 46 Wash. 248, 89 P. 548 (1907). *See also Wildman*, 46 Wn. App. at 553. *But see King v. Clodfelter*, 10 Wn. App. 514, 518 P.2d 206 (1974).

More recently, the Court of Appeals extended this rule to include other documents relating to the transaction at issue. *See Thor v. McDearmid*, 63 Wn. App. 193, 817 P.2d 1380 (1991) (waiver by introduction of letter written to decedent); *Bentzen v. Demmons*, 68 Wn. App. 339, 842 P.2d 1015 (1993) (waiver by submission of affidavit of decedent's son regarding transaction in support of summary judgment).

In resolving this case, however, we need not address the deadman's statute's applicability to documentary evidence in general. Here, we are concerned only with its effect on the introduction of Dr. Kerr's medical records.

■ The Ericksons contend the medical records were admissible under the business records exception to the deadman's statute. We agree. To qualify for admission under the business records exception, records must be " 'kept in the usual course of business, and hence in no manner self-serving.' " *Vogt*, 27 Wn. App. at 176 (quoting *McDonald v. McDonald*, 119 Wash. 396, 403, 206 P. 23 (1922)). *See* RCW 5.45.020. Dr. Kerr's testimony reflects the entries were made contemporaneously with his treatment of Mrs. Erickson and in the usual course of his medical practice. The medical records are also not self-serving, being introduced by the Ericksons in support of their claims.

■ Dr. Kerr asserts, however, that it is fundamentally unfair for the estate to admit the medical records, draw factual inferences therefrom by use of expert witnesses, ànd then invoke the statutory bar to silence any reply. Commentators have long disfavored deadman's statutes for similar reasons. *See, e.g.*, 1 Kenneth S. Broun et al., *McCormick on Evidence* § 65, at 251 (John W. Strong gen. ed., 4th ed. 1992); 2 John H. Wigmore, *Evidence* §§ 578-580 (James H. Chadbourn rev. ed. 1979). Any argument on this score, however, is more properly brought before the Legislature. We note the two cases cited by Dr. Kerr in support of his position rely on a statutory exception to the Illinois Dead Man's Act. *See Hoem v. Zia*, 159 Ill. 2d 193, 636 N.E.2d 479 (1994); *Haist v. Wu*, 235 Ill. App. 3d 799, 601 N.E.2d 927 (1992) (both cases cite Ill. Rev. Stat. ch. 110, para. 8-201(a) (1981)). Moreover, both parties may retain experts to make inferences based on admitted medical records. Testimony by third parties is not excluded under the statute; only "part[ies] in interest" are precluded from testifying on their own behalf. RCW 5.60-.030; *Rabb v. Estate of McDermott*, 60 Wn. App. 334, 803 P.2d 819 (1991); *Aetna Life Ins. Co. v. Boober*, 56 Wn. App. 567, 784 P.2d 186 (1990).

■ We hold the introduction of Dr. Kerr's medical records did not waive the protection of the deadman's statute as to the estate. The deadman's statute is inapplicable to the action brought by the Ericksons in their individual capaci-

ties, *See Maciejczak v. Bartell*, 187 Wash. 113, 60 P.2d 31 (1936) (deadman's statute only applies to actions brought on behalf of estate).

The next issue is whether the trial court abused its discretion in excluding testimony of a conversation Dr. Kerr had with Andrew Erickson following Mrs. Erickson's suicide. During that conversation, Dr. Kerr inquired about Mrs. Erickson's health apparently forgetting that she had died. The trial court stated the evidence was not "substantive evidence of anything' ", concluding the evidence was irrelevant and any marginal relevance was outweighed by its prejudicial effect. *Erickson v. Kerr*, 69 Wn. App. 891, 902, 851 P.2d 703 (1993). *See* ER 403. The Court of Appeals reversed, ruling Dr. Kerr's credibility went "to the heart of the malpractice issue" and the evidence was not "unfairly" prejudicial. *Erickson*, 69 Wn. App. at 902.

On review, the parties dispute when this conversation occurred. The Ericksons assert the conversation took place less than 3 weeks after Mrs. Erickson's death. Dr. Kerr contends the conversation occurred nearly a year later. The trial court did not resolve this dispute. A finding of fact, however, is not crucial because the timing of the conversation affects its relevance and prejudicial effect in a proportional manner. If the inquiry occurred shortly after the suicide, its relevance and prejudicial effect are each greater, while both are lessened by the passage of time.

Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice . . .." ER 403. *See Carson v. Fine*, 123 Wn.2d 206, 225, 867 P.2d 610 (1994). Federal law, state law, and commentators agree that "'unfair prejudice' " results from evidence which is "dragged in" for its prejudicial effect or is likely to evoke an emotional response rather than a rational decision. *Carson*, 123 Wn.2d at 223 (quoting *United States v. Roark*, 753 F.2d 991, 994 (11th Cir. 1985)). ER 403 has a presumption in favor of the admissibility of relevant evidence and the burden of establishing unfair prejudice is on the party seeking exclusion. *See Carson*, 123 Wn.2d at 225.

■ ■ We review a trial court's balancing under ER 403 under a manifest abuse of discretion standard. *See Carson*, 123 Wn.2d at 226. Abuse of discretion occurs if the decision is " 'manifestly unreasonable or based upon untenable grounds or reasons.' " *Industrial Indem. Co. of Northwest, Inc. v. Kallevig*, 114 Wn.2d 907, 926, 792 P.2d 520, 7 A.L.R.5th 1014 (1990) (quoting *Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 77, 684 P.2d 692 (1984)).

Dr. Kerr's credibility was a "central issue" in this malpractice action. *Carson*, 123 Wn.2d at 226. The record establishes Dr. Kerr relied on his memory in rendering treatment to Phillipa Erickson and in testifying about that treatment. See Report of Proceedings, at 149, 164, 170, 177, 178, 192, 209, 211, 216, 220-21, 226, 231-32. Dr. Kerr frequently testified as to what he "would have" done or is "sure" he or Mrs. Erickson said in certain situations when the records are silent on those points. See Report of Proceedings, at 212, 216, 226, 232, 235. Thus, evidence of Dr. Kerr's forgetfulness was relevant to the issue of his credibility. The trial court's conclusion that Dr. Kerr's question was not "substantive evidence of anything" was unfounded.

We agree with Dr. Kerr the proffered testimony is prejudicial. In context, however, the prejudicial effect cannot be reasonably found to "substantially outweigh" its relevance. The incident involved the parties to this lawsuit and occurred, at least, within a year of Mrs. Erickson's suicide. The evidence was not cumulative as there was little, if any, other evidence probative of Dr. Kerr's forgetfulness. Courts readily admit such prejudicial evidence under similar circumstances. *See, e.g., Carson*, 123 Wn.2d at 224 (citing *State v. Crenshaw*, 98 Wn.2d 789, 806, 659 P.2d 488 (1983) (repulsive or gruesome photographs are admissible if accurate and not cumulative)).

Although trial courts are granted considerable discretion in balancing evidence under ER 403, we hold, in this instance, the trial court abused its discretion in excluding Andrew Erickson's testimony in the wrongful death action. On remand, Dr. Kerr's credibility will be central in that

action but not in the action on behalf of the estate because of our resolution of the deadman's statute issue.

Dr. Kerr next contends the Court of Appeals erred in reversing the trial court's admission of Anne DeLaurenti-Newton's testimony under ER 801(d)(2).

ER 801(d)(2)(i) provides:

A statement is not hearsay if —

. . . .

(2) . . . The statement is offered against a party and is (i) the party's own statement, in either an individual or a representative capacity . . . .

In her deposition, DeLaurenti-Newton testified that Mrs. Erickson told her that Mr. Erickson was an abusive husband, was tight with money, and should be considered a prime suspect if anything ever happened to her. This evidence was obtained to rebut expected testimony by Mr. Erickson on the issue of damages that he and his wife enjoyed a close relationship.

The trial court denied the Ericksons' motion in limine to exclude the testimony ruling the statements were admissions of a party opponent under ER 801(d)(2). The Court of Appeals reversed as to the Ericksons' wrongful death action holding the testimony was hearsay. *Erickson*, 69 Wn. App. at 902. *See* ER 804(b)(3). The court held any error as to the estate was not preserved. *Erickson*, 69 Wn. App. at 902. We agree.

Mrs. Erickson's statements were not an admission of a party-opponent as to the wrongful death action brought by Andrew and Craig Erickson in their individual capacities. The statements also do not fall within the hearsay exception for statements made against interest. *See* ER 804(b)(3). We hold DeLaurenti-Newton's testimony is excluded as hearsay in the wrongful death action and decline to rule on the estate's cause of action because no objection was made or preserved on its behalf.

In their Answer to the Petition for Review, the Ericksons assert the trial court erred in failing to give three proposed instructions and in excluding a notation in Dr. Sako's

records. After consideration of these claims, we find they are without merit.

We grant the Ericksons' emergency motion to supplement the record on review and deny their motion to submit a reply to Dr. Kerr's supplemental brief.

We affirm in part, reverse in part, and remand for a new trial in accordance with this opinion.

UTTER, BRACHTENBACH, SMITH, JOHNSON, and MADSEN, JJ., concur.

DURHAM, J. (concurring in part, dissenting in part) — I agree with the majority opinion in all regards except the admission of one particular statement made by the Ericksons' family physician, Dr. Kerr. In 1987, Phillipa Erickson committed suicide by consuming an overdose of sleeping pills. Dr. Kerr had prescribed the pills. Almost a year after her death, Dr. Kerr, while treating her husband, asked how Phillipa "was doing". In the subsequent malpractice action brought by the Erickson family against Dr. Kerr, the Ericksons tried to introduce this incident as evidence of Dr. Kerr's poor memory in his treatment of Phillipa. I disagree with the admission of this statement for two reasons. First, as a procedural matter, this issue was not preserved for appeal. Second, this particular statement has no bearing on Dr. Kerr's professional competence or his credibility.

In response to a pretrial motion in limine, the trial court ruled that Dr. Kerr's comment could not be used as substantive evidence by the Plaintiff. However, the court's ruling on the motion in limine was only a preliminary ruling. The court explicitly left open the possibility that this evidence could come in as the trial progressed, as reflected in this colloquy regarding the admissibility of this conversation:

> THE COURT: He was obviously forgetful in this instance. Does that indicate general forgetfulness? You want to use it to impeach him. He says he can remember — you have to lay a foundation, if he says he never forgets anything.

> MR. McIVOR: Well, clearly, he won't say that, your Honor.

THE COURT: I think that's how you lay a foundation for impeachment. I think you have to lay a foundation to use for impeachment. I don't see how it can come in as substantive evidence. It's not substantive evidence of anything.

MR. VULLIET: Well, they are going to be testifying apparently that Dr. Kerr relies on his memory to treat his patients. Say, "well, you don't always remember everything, do you, Doctor?"

MR. McIVOR: I guess we will have to wait and see what we do testify to.

THE COURT: I'm saying you can lay a foundation for impeachment. But it doesn't come in as substantive evidence now. I will grant the motion.

With respect to any motion in limine, if circumstances seem, during the course of the trial, that counsel thinks that all bets are off, you don't do it in front of the jury. You tell the Court and let me go into it.

But I will grant the motion on No. 5 now. And the plaintiff may be allowed to establish a foundation for impeachment.

Report of Proceedings (RP) (Oct. 7, 1991), at 37-38.

The judge, rather than making a final ruling, left it open for counsel to challenge this exclusion later if the evidence appeared to become probative as the trial progressed. No objection, challenge or offer of proof was ever made.

When a trial judge makes a tentative ruling on a motion in limine, leaving open the possibility of later admission, a party is obligated to raise the issue at the appropriate point during trial. *State v. Noltie*, 116 Wn.2d 831, 844, 809 P.2d 190 (1991). Failure to make such later objection waives the issue for purposes of appellate review. *State v. Koloske*, 100 Wn.2d 889, 896, 676 P.2d 456 (1984), *overruled on other grounds by State v. Brown*, 111 Wn.2d 124, 761 P.2d 588 (1988). Hence, any objection to the trial court's preliminary ruling was waived by Erickson's failure to raise the issue again once the trial had begun.

Even were we to ignore these procedural infirmities, the majority has given excessive weight to the probity of this evidence in conducting its ER 403 analysis. This rule allows relevant evidence to be "excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury". ER 403. Trial court rulings under ER 403 are reviewed under an

abuse of discretion standard. *Carson v. Fine,* 123 Wn.2d 206, 225, 867 P.2d 610 (1994).

The majority admits this evidence is prejudicial, but finds that its prejudicial effect is substantially outweighed by its probity. Majority, at 191. Before the probative value of this evidence can be determined, the purpose of the evidence must be clear. There is a vital difference between Dr. Kerr's ability to remember his course of treatment, relying on his notes and memory, and his ability to avoid a spontaneous social blunder. The incident represents only a misfired greeting, and does not imply a lack of intelligence, credibility, or professional competence. If the accidental misuse of such reflexive social rituals is probative of credibility or competence, every professional who has had to deal daily with more than one or two clients must be suspect.

On the other hand, if this evidence is considered probative of Dr. Kerr's memory generally, then it is merely cumulative, as there was a wealth of other evidence indicating his memory was imperfect. The majority is factually mistaken when it claims that "there was little, if any, other evidence probative of Dr. Kerr's forgetfulness". Majority, at 191. The record is replete with examples of the doctor admitting that he could not remember some detail. See, *e.g.,* RP (Oct. 10, 1991), at 258, 265, 268, 276, 287, 293, 298. When asked on cross examination whether his memory was infallible, he truthfully answered, "No". RP (Oct. 10, 1991), at 279. Thus, the fallibility of his memory was never an issue, making this single insensitive comment marginal at best. *State v. Crenshaw,* 98 Wn.2d 789, 807, 659 P.2d 488 (1983).

For these reasons, I respectfully dissent on this issue.

Guy, J., concurs with Durham, J.