IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| MICHAEL MOYER, individually and as Personal Representative of the Estate of GRANT MOYER, Deceased,<br><br>Appellant,<br><br>v.<br><br>PEACEHEALTH, a Washington corporation d/b/a PEACEHEALTH ST. JOSEPH HOSPITAL; WILLIAM LOMBARDI, M.D.; and SANJEEV VADERAH, M.D.,<br><br>Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 75836-5-I<br><br>DIVISION ONE<br><br><br><br>UNPUBLISHED OPINION<br><br>FILED: April 16, 2018 |

BECKER, J. — In this medical malpractice action, a jury found the defendants not negligent. Appellant contends the trial court committed prejudicial error by excluding evidence he offered to undermine the credibility of one of the doctors. He fails to show that the evidence was relevant or helpful to jurors' understanding of the issues at stake.

FACTS

Eighty-five-year-old Grant Moyer started experiencing episodes when exercising during which he felt so dizzy he thought he might faint. Afterwards, Moyer felt weak and unsteady for an hour or two. These episodes became increasingly frequent. Moyer's primary care physician referred him to Skagit

Valley Hospital for cardiac testing. The testing revealed heart disease that was causing blockage in one of Moyer's arteries. Moyer elected to undergo surgery.

Cardiologists William Lombardi and Sanjeev Vaderah, respondents in this appeal, performed Moyer's surgery on February 11, 2013, at Bellingham's PeaceHealth St. Joseph Medical Center. The procedure involved placing tubes called stents in Moyer's arteries to allow increased blood flow. Moyer was discharged from the hospital two days after the surgery.

On February 22, 2013, Moyer was airlifted from his home in Friday Harbor back to PeaceHealth after displaying symptoms of a heart attack. His condition deteriorated, and he died in the hospital on February 26, 2013.

Moyer was survived by his wife and three adult children. A pathologist performed an autopsy at the family's request. His opinion was that Moyer died due to complications resulting from a misplaced stent.

Michael Moyer, Grant Moyer's son and the representative of his estate, initiated this suit against PeaceHealth, Dr. Lombardi, and Dr. Vaderah on April 17, 2015. The complaint included allegations that the defendants were negligent for (1) performing a procedure that was not medically indicated, (2) failing to adequately review Moyer's medical records and analyze his case before the procedure, and (3) blocking Moyer's artery and collateral branches during the procedure. All defendants denied liability.

Trial began on June 27, 2016. Moyer's witnesses included the pathologist who performed the autopsy and cardiologists who opined that the defendants provided substandard care. The defense countered with expert testimony that

Dr. Lombardi and Dr. Vaderah met the standard of care in their treatment of Moyer and that his death was not caused by their actions. A pathologist disagreed with the conclusion in the autopsy report that the stents were misplaced.

By verdict rendered July 15, 2016, the jury determined that none of the defendants were negligent. This appeal followed.

## ANALYSIS

Moyer challenges evidentiary rulings. We review for an abuse of discretion. Hollins v. Zbaraschuk, 200 Wn. App. 578, 580, 402 P.3d 907 (2017), review denied, 409 P.3d 1061 (2018). A court abuses its discretion when it makes a decision for untenable reasons or on untenable grounds. Hollins, 200 Wn. App. at 582-83.

The court heard defense motions in limine and ruled certain items of evidence inadmissible, primarily on the basis that they were irrelevant or unduly prejudicial. Moyer argued during the trial that the defendants "opened the door" to the previously excluded evidence. The court maintained its pretrial rulings.

Moyer contends exclusion of the evidence was reversible error. He claims the evidence was relevant to his theory that the defendant doctors were performing a high number of surgeries without adequate regard for whether those surgeries were medically indicated.

Relevance is a threshold requirement for admission of evidence. ER 401. The evidence must have some tendency to make the existence of any fact of consequence to determining the action more or less probable. ER 402.

Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. ER 403.

PowerPoint presentation on "appropriate use"

Through discovery, Moyer obtained a PowerPoint presentation prepared in 2012 by Gerald Marschke, the administrative director of cardiovascular services at PeaceHealth. The presentation is described on its title page as a "high level financial review" pertaining to chronic total occlusion procedures, the type of surgery that Dr. Lombardi and Dr. Vaderah performed on Moyer.

The presentation included statistics about the number of such surgeries done at PeaceHealth that satisfied "appropriate use criteria" developed by the American College of Cardiology. Of the 140 cases reviewed—all performed by Dr. Lombardi—45 percent were classified "appropriate," 22.1 percent were classified "uncertain," 9.3 percent were classified "rarely appropriate," and 23.6 percent were designated "not classifiable." Moyer interprets this data as showing that Dr. Lombardi had a pattern of performing chronic total occlusion procedures that were not medically indicated.

The record does not bear out Moyer's interpretation. Marschke is identified in the testimony as an administrator, not a physician. His declaration explains that the 2012 review was concerned with proper documentation, not medical necessity. Cases classified as "appropriate" were those where the hospital had the medical records to meet the criteria for each category. Cases were classified as "uncertain," "rarely appropriate," or "not classifiable" if criteria points were missing because of a lack of medical records or documentation.

4

Marschke declared that the findings in the review "did not cause me or anyone at the hospital any concern that Dr. Lombardi was failing to properly assess the indications for procedures he performed, or that any of his procedures were not clinically indicated." Marschke testified that one concern was that Medicare reimbursement might, at some point in the future, be tied to compliance with the appropriate use criteria.

Moyer did not rebut Marschke's testimony. Dr. David Jessup, a PeaceHealth physician who was knowledgeable about Marschke's review, confirmed that the concern motivating the review was proper documentation of the growing number of surgeries of this particular type. He said,

> I recall that Gerry [Marschke] had identified that a large number of the records that were not classifiable were due to poor documentation. And it was the belief that it was difficult for one physician to manage all the transfer of medical records from referring physicians. And we would build a different process that would allow Dr. Lombardi to continue to do the work he was doing and utilize administrative assistants to help obtain the records so he would have it available for him when he saw the patients in the clinic or before the procedure was done.

Dr. Lombardi was asked about "appropriate use" during his trial testimony. He testified that he is a "principal investigator" for the entity that develops the appropriate use criteria. A little later, he also testified that before beginning a surgery, PeaceHealth providers do a "time-out" to ensure, among other things, that all necessary paperwork is on file. None of his testimony establishes that the PowerPoint discussion of "appropriate use" criteria was even minimally relevant to Moyer's theory that Dr. Lombardi was doing unnecessary surgeries. Allowing jurors to hear that only 45 percent of Dr. Lombardi's surgeries were

deemed "appropriate" would have been prejudicial because it sounds like a criticism of his clinical judgment. Admitting the PowerPoint presentation would have required explanations of collateral matters, including several cases besides Moyer's. A trial court has discretion under ER 403 "to control distracting 'side issues.'" Riggins v. Bechtel Power Corp., 44 Wn. App. 244, 253, 722 P.2d 819, review denied, 107 Wn.2d 1003 (1986). We conclude the trial court had a tenable basis for excluding the PowerPoint.

Potential operation was "juicy"

The trial court excluded an e-mail in which Dr. Lombardi told Dr. Vaderah he hoped they would get to do an operation "that looks juicy." In other excluded e-mails, the two surgeons discussed scheduling up to four surgeries in a day. Moyer argues that the e-mails were relevant to his theory that Dr. Lombardi and Dr. Vaderah were more concerned with doing a large number of surgeries than with doing them carefully. We disagree. The e-mails would have had an inflammatory effect and virtually no probative value. It was not an error to exclude them. Similarly, it was not error to exclude testimony that Dr. Lombardi did not call the Moyer family after Moyer's death. Like the description of a surgical procedure as "juicy," this evidence would have suggested that Dr. Lombardi lacked personal warmth without proving anything about the quality of his treatment of Moyer.

### Comments to another physician

When Moyer returned to the hospital on February 22, 2013, Dr. Jessup was involved in his treatment. According to Dr. Jessup's deposition testimony, Dr. Lombardi approached him at professional conferences on two occasions after Moyer's death and described this litigation as "upsetting" and said that other PeaceHealth physicians "were not helping him." This was the extent of their conversation about the litigation. The trial court excluded Dr. Jessup's testimony about these comments by Dr. Lombardi. Moyer argues that the comments should have been admitted because they reveal Dr. Lombardi's "consciousness of guilt."

A defendant's threatening conduct towards a witness in a criminal case can be admitted as evidence that the defendant had a guilty conscience. State v. McGhee, 57 Wn. App. 457, 461-62, 788 P.2d 603, review denied, 115 Wn.2d 1013 (1990). A defendant doctor's intimidating communication to an expert witness in a medical malpractice case—that it was "inappropriate for doctors to testify against doctors"—has been held admissible to show the defendant's consciousness of the weakness of his position if he acted with intent to interfere with anticipated testimony. McCool v. Gehret, 657 A.2d 269, 273, 277 (Del. 1995). But here, the record is too sketchy to support an inference that Dr. Lombardi intended to threaten Dr. Jessup or interfere with his testimony, and there is no evidence that Dr. Jessup perceived Dr. Lombardi as having that intent. Excluding the evidence was not an abuse of discretion.

The "open door" rule

When one party introduces evidence on a particular topic, the "open door" rule allows the opposing party to also introduce evidence on that topic if necessary to clarify a false impression. Hollins, 200 Wn. App. at 586. "To close the door after receiving only a part of the evidence not only leaves the matter suspended in air at a point markedly advantageous to the party who opened the door, but might well limit the proof to half-truths." State v. Gefeller, 76 Wn.2d 449, 455, 458 P.2d 17 (1969).

Moyer argues that during trial, the defendants "opened the door" to some of the excluded evidence by presenting Dr. Lombardi as caring and compassionate. For example, Dr. Lombardi testified that he became a doctor "to help people," and that he has striven to improve patient care by developing new surgical techniques for treating occluded arteries. Moyer claims he should have been allowed to complete the picture with the e-mail in which Dr. Lombardi described an operation as "juicy" and with the fact that Dr. Lombardi did not offer condolences to the Moyer family.

Moyer likens this case to State v. Renneberg, 83 Wn.2d 735, 522 P.2d 835 (1974). In Renneberg, a criminal defendant described her life to the jury in glowing terms that implied she was a wholly respectable and upstanding citizen. In a ruling that was affirmed on appeal, the trial court allowed the State to introduce evidence that the defendant used drugs; the legitimate purpose of the evidence was to counter the impression she had created that she was a type of person most unlikely to commit grand larceny. Unlike in Renneberg, Dr.

Lombardi's testimony that he was motivated by a desire to help patients did not open the door to otherwise inadmissible character evidence. Dr. Lombardi put his character at issue to a certain extent with self-serving testimony about his compassionate motivations, but the evidence Moyer wanted to introduce did not negate that testimony. Moyer fails to identify any mischaracterization by Dr. Lombardi that would have been clarified by the excluded evidence. The open door rule does not apply. See City of Seattle v. Pearson, 192 Wn. App. 802, 818-19, 369 P.3d 194 (2016).

Moyer claims the excluded evidence was relevant to undermine Dr. Lombardi's credibility. His argument is not supported by the case on which he principally relies, Erickson v. Robert F. Kerr, M.D., PS, 125 Wn.2d 183, 190, 883 P.2d 313 (1994). In Erickson, a woman's suicide led to a lawsuit against her doctor. The claim was that the doctor had negligently failed to properly diagnose and treat the woman's clinical depression. Erickson, 125 Wn.2d at 185. In a conversation with the woman's husband after the suicide, the doctor asked about the woman's health, apparently forgetting that she had died. Erickson, 125 Wn.2d at 186. The court held this comment should have been admitted as evidence of the doctor's forgetfulness. The doctor relied on his memory, rather than records, when rendering treatment and when testifying about the treatment he provided. Erickson, 125 Wn.2d at 191. Evidence that the doctor had a faulty memory was relevant to the credibility of his testimony denying negligence.

The evidence Moyer wanted to introduce, in contrast, was not relevant to refute Dr. Lombardi's denial of negligence. The credibility of Dr. Lombardi's portrayal of himself as compassionate was not a central issue.

In summary, the rulings in limine did not constitute an abuse of discretion, and defense testimony during the trial did not create a situation where those rulings had to be revised.

The judgment on the verdict is affirmed.

_Becker, J._

WE CONCUR:

_Mann, ACJ_

_Cox, J._